IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 09-cv-00558-CMA-CBS

TERRY L. NICHOLS,
          Plaintiff,
v.

FEDERAL BUREAU OF PRISONS,
HARLEY LAPPIN,
MICHAEL NALLEY,
RON WILEY,
ROD BAUER,
DR. STEPHEN NAFZIGER, M.D.,
DERRICK JONES, and
KEITH POWLEY,
          Defendants.

---

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

---

Magistrate Judge Craig B. Shaffer

     This civil action comes before the court on:

(1)     "Motion to Dismiss the Second Amended Complaint by Director Lappin and
Regional Director Nalley Pursuant to Fed. R. Civ. P. 12(b)(1), 12(b)(2), and 12(b)(6)"
(filed September 21, 2009) (doc. # 68);
(2)     "Motion to Dismiss the Second Amended Complaint by Ron Wiley Pursuant to
Fed. R. Civ. P. 12(b)(1) and 12(b)(6)" (filed September 30, 2009) (doc. # 72);
(3)     "Motion to Dismiss the Second Amended Complaint by Derrick Jones and Ron
Bauer Pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6)" (filed September 30, 2009)
(doc. # 73);
(4)     "Motion to Dismiss the Second Amended Complaint by the Federal Bureau of
Prisons  Pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6)" (filed September 30, 2009)
(doc. # 74);
(5)     "Motion to Dismiss the Second Amended Complaint by Steven Nafziger (Official
Capacity Only) Pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6)" (filed September 30,
2009) (doc. # 76); and
(6)     "Motion to Dismiss the Second Amended Complaint by Keith Powley Pursuant to
Fed. R. Civ. P. 12(b)(1) and 12(b)(6)" (filed October 26, 2009) (doc. # 83).

Pursuant to the Order of Reference dated April 28, 2009 (doc. # 17) and the memoranda dated September 22, 2009 (doc. # 69), October 1, 2009 (doc. # 77), and October 27, 2009 (doc. # 84), these matters have been referred to the Magistrate Judge.  The court has reviewed the Motions, Mr. Nichols' Responses filed October 19, 2009 (doc. # 80), October 21, 2009 (doc. # 81), October 26, 2009 (doc. # 82), October 30, 2009 (doc. # 86), November 2, 2009 (doc. # 87), and November 12, 2009 (doc. # 93), Defendants' Replies filed November 3, 2009 (doc. # 89), November 5, 2009 (doc. # 90), November 10, 2009 (doc. # 91), November 16, 2009 (doc. # 94), November 18, 2009 (doc. # 95), and November 20, 2009 (doc. # 97), Mr. Nichols' Surreplies filed November 19, 2009 (doc. # 96), November 23, 2009 (doc. # 98 and one unnumbered docket entry made on November 23, 2009), November 27, 2009 (doc. # 100), and November 30, 2009 (doc. # 101), the pleadings, and the applicable law and is sufficiently advised in the premises.

I.      Statement of the Case

Plaintiff Mr. Nichols is currently incarcerated at the U.S. Penitentiary, Administrative Maximum ("ADX") in Florence, Colorado, serving a life sentence for convictions arising out of the bombing of the federal building in Oklahoma City, Oklahoma in 1995.

In his Second Amended Complaint ("SAC") filed on August 27, 2009 (doc. # 67), Mr. Nichols alleges two claims pursuant to *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971), and a third claim pursuant to the Religious Freedom Restoration Act ("RFRA"), 42 U.S.C. § 2000bb *et seq*., against the

Federal Bureau of Prisons ("BOP") and seven individual employees of the BOP. Mr. Nichols is suing the employees in their individual and official capacities as to Claims One and Two and in their official capacities as to Claim Three. (*See* SAC (doc. # 67) at p. 3 of 34 ("Each individually named person above . . . are being sued in their individual capacities, and in their . . official capacities (re: Claims 1 & 2). . . For Claim Three in official capacity only."). Mr. Nichols is suing the BOP "for injunctive relief only" in all three claims. (*See id*.; *see also* pp. 31-33 of 34). At the time the SAC was filed, Defendant Lappin was the Director of the BOP, employed in Washington, D.C., Defendant Nalley was a Regional Director of the BOP, employed in Kansas City, Kansas, Defendant Wiley was the Warden of ADX, Defendant Bauer was a Captain and ADX Healthcare Administrator, Defendant Nafziger was the ADX Clinical Services Director, Defendant Jones was the ADX Food Services Administrator, and Defendant Powley was the ADX Chaplain. (*See id*. at pp. 2-3 of 34).

Claim One is entitled "Subjecting Plaintiff to ongoing cruel and unusual punishment in violation of the 8th Amendment to the U.S. Constitution." (*See* doc. # 67 at p. 9 of 34). Claim Two is entitled "Subjecting Plaintiff to religious discrimination in ongoing violation of the First Amendment of the U.S. Constitution." (*See id*. at p. 19 of 34). Mr. Nichols clarifies that "he is alleging a violation of his free exercise of religion, First Amendment rights." (*See* doc. # 80 at p. 9 of 18). Claim Three is entitled "Subjecting Plaintiff to religious discrimination in ongoing violation of 42 U.S.C. § 2000bb, Religious Freedom Restoration Act" and alleges "religious discrimination" under RFRA. (*See id*. at p. 29 of 34). Claim Three alleges no separate facts,

incorporating by reference the factual allegations of Claim Two, is brought against the BOP and Defendants Powley, Wiley, Nalley, and Lappin in their official capacities only, and is for injunctive relief only. (*See id.* at p. 29 of 34). Mr. Nichols clarifies that "[a]ll three claims center on the absence of whole unrefined and living foods high in insoluble fiber in Mr. Nichols' daily diet" and "that the absence of <u>in</u>soluble fiber and living foods directly cause both his medical and religious issues." (*See, e.g.*, doc. # 80 at pp. 2, 12 of 18 (emphasis in original)). Mr. Nichols further clarifies that "none of the current meal options [are] suitable in meeting Mr. Nichols' religious requirements." (*See* doc. # 96 at p. 10 of 14).

II.    Sovereign Immunity from *Bivens* Claims

To the extent that Mr. Nichols is alleging his *Bivens* claims against the individual Defendants in their official capacities, such claims are barred by sovereign immunity

"*Bivens* claims allow plaintiffs to recover from individual federal agents for constitutional violations these agents commit against plaintiffs." *Robbins v. Wilkie*, 300 F.3d 1208, 1211 (10th Cir. 2002). *See also Correctional Services Corporation v. Malesko*, 534 U.S. 61, 66 (2001) (in *Bivens*, the Supreme Court recognized "an implied private right of action for damages against federal officers alleged to have violated a citizen's constitutional rights"). "It is well settled that the United States and its employees, sued in their official capacities, are immune from suit, unless sovereign immunity has been waived." *Atkinson v. O'Neill*, 867 F.2d 589, 590 (10th Cir. 1989) (citing *Kentucky v. Graham*, 473 U.S. 159, 165-67, 105 S. Ct. 3099, 3105 (1985)).

Thus, a *Bivens* action alleging that a federal employee violated a plaintiff's constitutional rights cannot be maintained against the United States or an agency of the United States. *See FDIC v. Meyer*, 510 U.S. 471, 486 (1994) (direct action for damages against federal agencies not recognized under *Bivens*). *See also Malesko*, 534 U.S. at 72 ("If a federal prisoner in a BOP facility alleges a constitutional deprivation, he may bring a *Bivens* claim against the offending individual officer, subject to the defense of qualified immunity. . . The prisoner may not bring a *Bivens* claim against the officer's employer, the United States, or the BOP."); *Simmat v. U.S. Bureau of Prisons* 413 F.3d 1225, 1231 (10th Cir. 2005) ("a *Bivens* claim lies against the federal official in his individual capacity – not . . . against officials in their official capacity"); *Hatten v. White*, 275 F.3d 1208, 1210 (10th Cir. 2002) (the doctrine of sovereign immunity precludes a *Bivens* action against the United States or any agency thereof); *Weaver v. United States*, 98 F.3d 518, 520 (10th Cir.1996) (a claim for damages against a federal defendant in his official capacity is treated as a claim against the United States).

Rule 12(b)(1) empowers a court to dismiss a complaint for lack of jurisdiction over the subject matter. Dismissal under Rule 12(b)(1) is not a judgment on the merits of a plaintiff's case, but only a determination that the court lacks authority to adjudicate the matter. A court lacking jurisdiction must dismiss the cause at any stage of the proceeding in which it becomes apparent that jurisdiction is lacking. A Rule 12(b)(1) motion to dismiss must be determined from the allegations of fact in the complaint, without regard to mere conclusory allegations of jurisdiction. The burden of establishing subject matter jurisdiction is on the party asserting jurisdiction. Accordingly, Plaintiff in this case bears the burden of establishing that this court has jurisdiction to hear his claims.

*Stine v. Wiley*, 2008 WL 4277748 *3 (D. Colo. 2008) (internal quotation marks and citations omitted).[1]

Mr. Nichols concedes that "sovereign immunity does bar claims for monetary damages in official capacity claims." (*See* docs. # 80 at p. 3 of 18 (emphasis in original)). Mr. Nichols' claims for damages against the individual Defendants in their official capacities pursuant to *Bivens* are thus properly dismissed with prejudice for lack of subject matter jurisdiction. Sovereign immunity is not a bar to Mr. Nichols' claims for injunctive relief. *See Simmat*, 413 F.3d at 1233 (Congress has waived sovereign immunity in most suits for nonmonetary relief in the Administrative Procedures Act, 5 U.S.C. § 702.). (*See also* doc. # 67 at p. 4 of 34 (asserting jurisdiction pursuant to 5 U.S.C. § 702)).

As to Mr. Nichols' RFRA claim, Congress has unequivocally waived sovereign immunity, though the waiver applies only to RFRA claims seeking injunctive relief. *Crocker v. Durkin*, 159 F. Supp. 2d 1258, 1269 (D. Kan. 2001); *Webman v. Fed. Bureau of Prisons*, 441 F.3d 1022, 1026 (D.C. Cir. 2006) (RFRA waiver does not include claims for money damages). Because Mr. Nichols seeks only injunctive relief to remedy his RFRA claim, sovereign immunity does not apply. (See doc. # 67 at p. 29 of 34). The court notes that suing Defendants Powley, Wiley, Lappin, and Nalley under RFRA in their official capacities for injunctive relief is effectively duplicative of suing the BOP under RFRA for injunctive relief. An official-capacity suit is an alternative method of suing the entity of which the officer is an agent. *Kentucky v. Graham*, 473 U.S. at

---

[1] Copies of unpublished decisions cited are attached to this Recommendation.

165. Thus, Mr. Nichols' claims against Defendants in their official capacities are in reality claims against the BOP.

III.     Motion to Dismiss by Defendants Lappin and Nalley

Among other grounds, Defendants Lappin and Nalley move to dismiss the SAC pursuant to Fed. R. Civ. P. 12(b)(2) for lack of personal jurisdiction. "Jurisdiction to resolve cases on the merits requires . . . authority over the parties (personal jurisdiction), so that the court's decision will bind them." *Gadlin v. Sybron Int'l Corp.*, 222 F.3d 797, 799 (10th Cir. 2000) (internal quotation marks and citation omitted). "In determining whether a federal court has personal jurisdiction over a defendant, the court must determine (1) whether the applicable statute potentially confers jurisdiction by authorizing service of process on the defendant and (2) whether the exercise of jurisdiction comports with due process." *Trujillo v. Williams*, 465 F.3d 1210, 1217 (10th Cir. 2006) (internal quotation marks and citation omitted).

When a court's power to exercise personal jurisdiction over a nonresident defendant is challenged by a motion under Fed. R. Civ. P. 12(b)(2) and the question of jurisdiction is resolved based only on the pleadings, the allegations in the complaint, the motion papers, and any supporting legal memoranda, without an evidentiary hearing, the burden is on the plaintiff to make a prima facie showing of a sufficient basis for jurisdiction. *Mylan Labs., Inc. v. Akzon, N.V.*, 2 F.3d 56, 60 (4th Cir. 1993). *See also Wenz v. Memery Crystal*, 55 F.3d 1503, 1505 (10th Cir. 1995) ("Where, as in the present case, there has been no evidentiary hearing, and the motion to dismiss for lack

of jurisdiction is decided on the basis of affidavits and other written material, the plaintiff need only make a prima facie showing that jurisdiction exists.").  "The plaintiff may make this prima facie showing by demonstrating, via affidavit or other written materials, facts that if true would support jurisdiction over the defendant."  *OMI Holdings, Inc. v. Royal Ins. Co. of Canada,* 149 F.3d 1086, 1091 (10th Cir. 1998).  It is the plaintiff's burden to demonstrate the existence of every fact required to satisfy both the forum's long-arm statute and the Due Process Clause of the Constitution.  *United Elec. Radio and Mach. Workers of America (UE) v. 163 Pleasant Street Corporation*, 987 F.2d 39, 43-44 (1st Cir. 1993) (internal quotation marks and citation omitted).

Where the federal statute at issue does not authorize nationwide service of process, a court may assert personal jurisdiction to "the extent allowed by the state in which the district court sits."  Fed. R. Civ. P. 4(k)(1)(A); *SCC Communications Corp. v. Anderson*, 195 F. Supp. 2d 1257, 1260 (D. Colo. 2002).  Because neither *Bivens*, 403 U.S. at 388, nor RFRA confers nationwide service of process, Rule 4(k)(1)(A) governs this court's authority to exercise personal jurisdiction over Defendants Lappin and Nalley as out-of-state defendants.  Rule 4(k)(1)(A) provides that "[s]erving a summons . . . establishes personal jurisdiction over a defendant . . . (A) who is subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located."

> When authorized by Federal Rule of Civil Procedure 4(k)(1)(A), service of process sufficient to exercise jurisdiction over a defendant is limited by state law, so that any challenge to the personal jurisdiction requires [the court] to assess the jurisdiction of the courts in the state where the district court is located. . . .

> Since in personam jurisdiction of a state court is limited by that state's laws and by the Fourteenth Amendment, [the court must] inquire whether the state long-arm statute authorizes the exercise of jurisdiction over the defendant. If it does, [the court] must then determine whether the state court's exercise of such jurisdiction is consistent with the Due Process Clause of the Fourteenth Amendment. . . .

*ESAB Group, Inc. v. Centricut, Inc.* 126 F.3d 617, 622-23 (4th Cir. 1997) (citations omitted).

"Colorado's long arm statute is coextensive with constitutional limitations imposed by the due process clause. Therefore, if jurisdiction is consistent with the due process clause, Colorado's long arm statute authorizes jurisdiction over a nonresident defendant." *Benton v. Cameco Corp.*, 375 F. 3d 1070, 1075 (10th Cir. 2004) (citation omitted). *See also United States v. Botefuhr*, 309 F.3d 1263, 1271 (10th Cir. 2002) (question of whether court can exercise personal jurisdiction "collapses into a single due process analysis under the Constitution") (internal quotation marks and citation omitted).

The Tenth Circuit has "carefully and succinctly la[id] out the well-established constitutional analysis for personal jurisdiction." *Benton*, 375 F. 3d at 1075.

> The Due Process Clause protects an individual's liberty interest in not being subject to the binding judgments of a forum with which he has established no meaningful contacts, ties, or relations. Therefore, a court may exercise personal jurisdiction over a nonresident defendant only so long as there exist minimum contacts between the defendant and the forum state. . . .
>
> The minimum contacts standard may be met in two ways. First, a court may, consistent with due process, assert specific jurisdiction over a nonresident defendant if the defendant has purposefully directed his activities at residents of the forum, and the litigation results from alleged injuries that arise out of or relate to those activities. Where a court's

exercise of jurisdiction does not directly arise from a defendant's forum-related activities, the court may nonetheless maintain general personal jurisdiction over the defendant based on the defendant's general business contacts with the forum state.

*OMI Holdings*, 149 F.3d at 1090-91 (internal quotation marks and citations omitted).

Defendants Lappin and Nalley argue that they do not have minimum contacts with the District of Colorado for purposes of specific jurisdiction. "In determining whether a defendant has established minimum contacts with the forum state, we examine whether the defendant purposefully avail[ed] itself of the privilege of conducting activities within the forum State." *Benton*, 375 F. 3d at 1075 (internal quotation marks and citation omitted). "A defendant's contacts are sufficient if the defendant purposefully directed its activities at residents of the forum, and . . . the plaintiff's claim arises out of or results from actions by the defendant himself that create a substantial connection with the forum state." *Benton*, 375 F. 3d at 1075 (internal quotation marks and citation omitted). The court "must consider whether the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297, 100 S. Ct. 559 (1986). "[I]t is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities *within the forum State*, thus invoking the benefits and protections of its laws." *Trujillo*, 465 F.3d at 1219 (internal quotation marks and citation omitted) (emphasis in original).

Mr. Nichols alleges that Defendants Lappin and Nalley reside in Kansas City, Kansas, and Washington, D.C., respectively. (*See* doc. # 67 at p. 2 of 34). Mr. Nichols

does not allege that Defendants Lappin or Nalley conducted any activities in Colorado or had any contact with him in Colorado. (*See* doc. # 80 at p. 3 of 18 (". . . neither Defendant works nor lives nor physically entered Colorado . . .")).

Mr. Nichols argues in his Response that he has alleged "purposeful and personal involvement by Defendants Lappin and Nalley that was directed specifically to Plaintiff alone." (*See* doc. # 80 at pp. 4 of 18 (emphasis in original)). In Claim One, Mr. Nichols alleges that Defendants Nalley and Lappin "became aware of Plaintiff's serious medical issues through the administrative remedy appeal or other means." (*See* doc. # 67 at p. 17 of 34). Mr. Nichols alleges that Defendant Nalley, "as supervisor, denied Plaintiff's medical grievance appeal" on August 31, 2006 and that the "BOP Central Office, supervised by Director Lappin, denied Plaintiff's medical grievance appeal." (*See* SAC (doc. # 67) at p. 17 of 34). Mr. Nichols alleges that Defendants Nalley and Lappin "denied Plaintiff's appeals without so much as having the ADX Clinical Director examine Plaintiff to determine the legitimacy and seriousness of Plaintiff's medical issues or to rule out other factors such as cancer that may cause his problems." (*See id.*). Mr. Nichols further alleges that Defendants Nalley and Lappin "directed, knew of, allowed and/or encouraged Warden Wiley to excessively cut the ADX budget and staff to the detriment of inmate healthcare. . . ." (*See id.* at p. 18 of 34). The SAC incorporates by reference paragraphs 46 and 47 and states that they apply "equally as well to Defendants Lappin and Nalley." (*See id.* at p. 18, ¶ 88).

In Claim Two, Mr. Nichols alleges that Defendants Lappin and Nalley denied his administrative grievances regarding the religious issues he raised as to his diet,

approved Warden Wiley's creation of the "arbitrary and contradictory policy or custom" of placing him on the "Common Fare" diet, and refused to provide him with the "(old) CF diet." (*See id*. at pp. 27-28 of 34).[2] Claim Three alleges a RFRA claim, incorporating by reference the factual allegations of Claim Two. (*See id*. at p. 29 of 34).

Mr. Nichols' allegations are insufficient to subject Defendants Lappin and Nalley to suit in Colorado. Allegations that a prison official authorized actions or denied administrative grievances knowing they would have effects in the forum state is insufficient to establish jurisdiction. *See Johnson v. Rardin*, 1992 WL 9019 at * 1 (10th Cir. Jan. 17, 1992) (dismissing BOP Director for lack of minimum contacts where his only involvement was reviewing inmate's appeals and occasionally advising prison staff members in forum state); *Georgacarakos v. Wiley*, 2008 WL 4216265, *5 (D. Colo. 2008) (holding that the court lacked personal jurisdiction over Lappin when the plaintiff's sole allegation was that "BOP Defendants were placed on notice of the allegedly unconstitutional conditions at ADX by his various grievances, and that their failure to remedy the situation constitutes acquiescence.");[3] *Durham v. Lappin*, 2006 WL 2724091 at * 5 (D. Colo. Sept. 21, 2006) (dismissing claim against BOP Director,

---

[2] The "Common Fare diet" is a diet provided at ADX that is designed to meet the dietary needs of a number of religions. "The BOP decided to serve kosher meals in the Common Fare plan after reviewing the dietary requirements of various religious faiths. It concluded that a kosher meal was the strictest diet and subsumed all other religious dietary needs." *Patel v. U.S. Bureau of Prisons*, 515 F.3d 807, 810 (8th Cir. 2008). "Local prisons may not make changes to the Common Fare plan; such changes must occur pursuant to the BOP's direction, not at individual prisons." *Id*.

[3] Copies of unpublished cases were previously provided to Mr. Nichols, attached to Defendants Lappin's and Nalley's Motion to Dismiss. (*See* docs. # 68-1 through # 68-4).

National Inmate Appeals Administrator and BOP Regional Director, holding that their contacts with the forum state "were completely fortuitous, resulting from the fact that the Plaintiff – to whom they were responding when answering grievances – was located in Colorado"). The Tenth Circuit has affirmed dismissal for lack of personal jurisdiction over Defendant Lappin's predecessor based on allegations that, as BOP Director, he had "overall responsibility" for BOP's operations in Colorado and that the plaintiff had sent grievance letters to him. *See Hill v. Pugh*, 75 Fed. Appx. 715, 719 (10th Cir. 2003). "It is not reasonable to suggest that federal prison officials may be hauled into court simply because they have regional and national supervisory responsibilities over facilities within a forum state." Id.

Mr. Nichols does not allege any conduct by Defendants Lappin or Nalley in Colorado. "Each defendant's contacts with the forum State must be assessed individually." *Trujillo*, 465 F.3d at 1221 n.12 (internal quotation marks and citation omitted). Mr. Nichols' allegations relate to the denial of his administrative requests and speculation that the offer to place him back on the Common Fare diet in 2008 must have been approved by either Lappin or Nalley. (*See* doc. # 67 at p. 27 of 34; *see also* doc. # 80 at p. 6 of 18 ("Defendants Lappin and Nalley's purposeful acts were done surreptitiously through ADX staff . . ."). Mr. Nichols does not cite and the court is not aware of any legal authority for exercising personal jurisdiction over Defendants Lappin and Nalley based on Mr. Nichols' speculation that individuals in Colorado were acting at their direction. *See, e.g., Trujillo*, 465 F.3d at 1219 n.10 ("the fact that the Virginia defendants may have acted as agents of the State of New Mexico . . . is also not

sufficient, on its own, to give the New Mexico district court power to exercise personal jurisdiction").  "[I]t is the defendant's contacts with the forum state that are of interest in determining whether personal jurisdiction exists, not its contacts with a resident of the forum."  *Trujillo*, 465 F.3d at 1220 (internal quotation marks and citation omitted).  Nor does Mr. Nichols' allegation that "Defendants Nalley and Lappin knew or should have known of those facts in paragraph 136 above" (*see* doc. # 67 at ¶ 137) provide a basis for personal jurisdiction.  Due process is only satisfied if "the plaintiff's claim arises out of or results from actions by the defendant himself that create a substantial connection with the forum state."

Mr. Nichols having failed to allege a prima facie basis for maintaining specific or general personal jurisdiction over Defendants Lappin or Nalley, the court lacks personal jurisdiction over them and Mr. Nichols' claims against them are properly dismissed pursuant to Fed. R. Civ. P. 12(b)(2).

IV.     Motion to Dismiss by Defendant Wiley

Among other grounds, Defendant Wiley moves to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) for lack of personal participation.  A court may dismiss a complaint for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).

> Under Rule 12(b)(6), [d]ismissal is appropriate only if the complaint, viewed in the light most favorable to plaintiff, lacks enough facts to state a claim to relief that is plausible on its face.  A claim is plausible on its face when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully.

Although plaintiffs need not provide detailed factual allegations to survive a motion to dismiss, they must provide more than labels and conclusions or a formulaic recitation of the elements of a cause of action. Furthermore, conclusory allegations are not entitled to the assumption of truth.

*Masters v. Gilmore*, 663 F. Supp. 2d 1027, 1037 (D. Colo. 2009) (internal quotation marks and citations omitted).

*Bivens* suits seek to impose personal liability upon a federal government official for damages "arising out of the federal official's violation of federal constitutional law." *Applewhite v. U.S. Air Force*, 995 F.2d 997, 999 n.8 (10th Cir. 1993). "To establish a *Bivens* cause of action, a party must have some evidence to support finding that [a] federal agent acting under color of such authority violated some cognizable constitutional right of plaintiff." *Hron v. Jenkins*, 15 F. Supp. 2d 1082, 1085 (D. Kan. 1998) (citation omitted). Thus, personal participation is an essential allegation in a *Bivens* action. A defendant may not be held liable merely because of his or her supervisory position. *See Kite v. Kelley*, 546 F.2d 334, 336-38 (10th Cir. 1976) (plaintiff suing federal officials for constitutional violations under *Bivens* must show affirmative link between defendant's conduct and the alleged constitutional deprivation). *See also Dalrymple v. Reno*, 334 F.3d 991, 995 (11th Cir. 2003) (no *respondeat superior* liability in *Bivens* actions); *Simpkins v. District of Columbia Gov't*, 108 F.3d 366, 369 (D.C. Cir. 1997) (complaint must allege personal involvement by government official in events giving rise to constitutional claim under *Bivens*); *Del Raine v. Williford*, 32 F.3d 1024, 1047 (7th Cir. 1994)(*respondeat superior* cannot be the basis of a *Bivens* claim, there must be individual participation and involvement by the defendant).

In Claim One Mr. Nichols alleges that Defendant Wiley: (1) denied his cop-out regarding the lack of insoluble fiber in the food available at the ADX; (2) became aware of his administrative remedy grievances regarding his medical issues and his medical records; (3) "as supervisor," failed to ensure that he received proper medical care; (4) excessively cut the ADX budget and staff and that such cuts "directly affect[ ] Plaintiff's, *et al.*, attempts to get one's serious medical issues properly and timely addressed;" (5) created a policy that discourages examinations and proper treatment by medical doctors; (6) "as supervisor," created policies that allow unidentified "illegal acts to exist," learned of unidentified violations and failed to fix them, directly participated in the violations, and "failed to properly supervise those he manages;" and (7) deprived him of a high fiber diet. (*See* doc. # 67 at ¶¶ 39-50).

In Claim Two Mr. Nichols alleges that Defendant Wiley (1) denied his BP-9 grievance and failed to address the constitutional issues raised in the grievance; (2) "as supervisor," created policies that allow unidentified "illegal acts to exist," learned of violations and failed to fix them, directly participated in the violations, and "failed to properly supervise those he manages;" (3) deprived him of access to the "old" Common Fare diet "that closely adhered to his religious needs" and continues to deny him a diet that closely meets his religious needs. (*See* doc. # 67 at ¶¶ 124-133). Claim Three alleges a RFRA claim, incorporating by reference the factual allegations of Claim Two. (*See id.* at p. 29 of 34). In sum, the claims Mr. Nichols has alleged against Defendant Wiley are that he denied administrative grievances, undertook budget cuts, and failed to supervise others.

Mr. Nichols' allegations do not meet the pleading standards for a *Bivens* claim against Defendant Wiley. First, to the extent Mr. Nichols alleges that Defendant Wiley's participation is based upon his supervisory position, there is no *respondeat superior* liability for a *Bivens* claim and Mr. Nichols' attempt to distinguish "respondeat superior" liability from "supervisory" liability is unavailing. "In a § 1983 suit or a Bivens action – where masters do not answer for the torts of their servants – the term "supervisory liability" is a misnomer. Absent vicarious liability, each Government official, his or her title notwithstanding, is only liable for his or her own misconduct." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).

Second, Mr. Nichols attempts to hold Defendant Wiley liable on the basis that he denied grievances. (*See, e.g.,* doc. # 67 at p. 25 of 34 ¶ 124 ("In June 2006 Plaintiff clearly raised and made known to Warden Wiley his sincerely held religious beliefs, his diet requirements, and ADX staff violating Mr. Nichols' constitutional rights through the BP-9 grievance process."). However, without an allegation of direct responsibility for the alleged violations, Defendant Wiley cannot be held liable for an alleged constitutional violation on the basis that he denied a grievance. The Tenth Circuit has repeatedly held "that the denial of . . . grievances alone is insufficient to establish personal participation in the alleged constitutional violations." *Whitington v. Ortiz*, 307 Fed. Appx. 179, 193 (10th Cir. 2009) (internal quotation marks and citation omitted); *accord George v. Smith*, 507 F.3d 605, 609 (7th Cir. 2007) ("Ruling against a prisoner on an administrative complaint does not cause or contribute to the violation."). There is no basis for holding Defendant Wiley liable under *Bivens* for the denial of grievances.

Mr. Nichols' allegations that Defendant Wiley was put on notice by grievances do not provide adequate factual grounds that Defendant Wiley was personally involved in any of the violations alleged. The mere filing of grievances is not sufficient to support Mr. Nichols' claims that his Eighth Amendment rights were violated by Defendant Wiley. For instance, Mr. Nichols alleges Defendant Wiley "became aware" in 2007 of his medical issues that had arisen in 1984. By reviewing a grievance, Defendant Wiley could not have participated in the failure to treat Mr. Nichol's medical issues before the grievance was filed.

Third, Mr. Nichols' attempt to hold Defendant Wiley liable on the basis that he approved policies and made decisions does not state a claim for individual liability. The SAC presents nothing more than a warden's reasonable reliance on the judgment of prison staff, which negates rather than supports individual liability. (*See, e.g.,* docs. # 81 at p. 7 of 17; # 98 at pp. 7-8 of 13 ("As Warden he: ran the show; set policy; made final decisions, held weekly staff meetings with subordinates discussing current issues; and dictated his orders to subordinates to be followed."); ("Wiley knew this from the documents Plaintiff sent him, the BP-9 grievance, Plaintiff's 1984 medical records, and discussions with ADX medical and food service staff and regional and/or Central office officials.")). *See Iqbal*, 129 S. Ct. at 1944 (allegations that a defendant was the "principal architect" of a policy and another Defendant was "instrumental in [its] adoption, promulgation, and implementation" were insufficient).

Because Mr. Nichols fails to adequately allege that Defendant Wiley personally participated in the allegedly unconstitutional conduct, and because supervisory status alone does not equate to liability, the SAC fails to allege grounds on which Defendant

18

Wiley could be held individually liable for the medical and religious decisions challenged. Thus, Defendant Wiley in his individual capacity is properly dismissed from Claims One and Two pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim for which relief can be granted.

V.      Motion to Dismiss by Defendants Jones and Bauer

Among other grounds, Defendants Jones and Bauer move to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) for lack of personal participation. In Claim One Mr. Nichols alleges that Defendant Jones: (1) received his cop-outs and had discussions with him in which he requested that more foods with 100% whole wheat and bran and fewer refined foods be served, "but FSA Jones made no changes;" (2) failed to follow the U.S. Government Food Pyramid; (3) knowingly served refined food and failed to serve food with more insoluble fiber; and (4) is aware that the consumption of "numerous dead and refined foods . . . contributes to Mr. Nichols' serious chronic medical issues." (*See* doc. # 67 at ¶¶ 51-58). Mr. Nichols alleges with regard to Defendant Bauer: (1) "[s]ince 2004 to present, Plaintiff has sent numerous cop-outs, his 1984 medical records, and other documents to Captain Bauer regarding Mr. Nichols' serious medical issues;" (2) "Captain Bauer is well informed on this issue and has taken an active part directly, and through those he supervises, in depriving and denying Plaintiff proper medical care and relief;" (3) he is "deliberately indifferent to, and depriving Plaintiff of, a high fiber diet that Plaintiff medically documented;" and (4) he has deprived Mr. Nichols of medical care by "failing to supervise his subordinates to have Plaintiff examined, diagnosed, and treated by a licensed medical doctor." (*See id.* at ¶¶ 76-81). Mr.

Nichols concurs that Claims Two and Three do not apply to Defendants Jones or Bauer, as he has not made any allegations against them in those claims. (*See* doc. # 86 at p. 3 of 15).

Mr. Nichols has failed to allege facts to show that Defendants Jones and Bauer actually and knowingly participated in specific unconstitutional conduct. Mr. Nichols acknowledges that he makes only "minimal" allegations against Defendants Jones and Bauer, but argues that he "has bolstered his claims with more specific allegations and facts in this Response . . . ." (*See* doc. # 86 at p. 7 of 15). However, Mr. Nichols may not amend his pleadings through arguments in a brief. *See Shanahan v. City of Chicago*, 82 F.3d 776, 781 (7th Cir. 1996) ("A plaintiff may not amend his complaint through arguments in his brief in opposition to a motion for summary judgment.").

Mr. Nichols cites paragraphs 4, 5, 8-13, 19-28, 51-59, and 76-79 of the SAC. Paragraphs 4, 5, and 8-13 contain background factual allegations. They contain no allegations regarding any acts undertaken by Defendant Jones or Bauer. Similarly, paragraphs 19-28 contain general allegations and fail to allege any facts regarding what, if any, actions were personally undertaken by Defendant Jones and Bauer. Paragraphs 51 to 59 claim that Defendant Jones: (1) received Mr. Nichols' cop-outs and had discussions with Plaintiff in which he requested that more foods with 100% whole wheat and bran and fewer refined foods be served, "but FSA Jones made no changes;" (2) failed to follow the U.S. Government Food Pyramid; (3) knowingly served refined food and failed to serve food with more insoluble fiber; and (4) is aware that consumption of "numerous dead and refined foods . . . contributes to Mr. Nichols'

serious chronic medical issues."  These paragraphs do not allege any specific actions by Defendant Jones.  To the extent that Mr. Nichols claims that Mr. Jones has failed to follow the "U.S. Government Food Pyramid guidelines" (*see* doc. # 67 at p. 13 of 34 ¶ 53) [and] BOP food policies" (*see* doc. # 86 at p. 2 of 15), the Constitution does not require strict adherence to nutritional guidelines or Bureau policy.  *See Hovater v. Robinson*, 1 F.3d 1063, 1068 n. 4 (10th Cir. 1993) (a prison official's "failure to adhere to administrative regulations does not equate to a constitutional violation");  *Gaines v. Stenseng*, 292 F.3d 1222, 1225 (10th Cir. 2002) ("To the extent [plaintiff] seeks relief for alleged violations of state statutes and prison regulations, however, he has stated no cognizable claim" for deprivation of a right secured by the Constitution or laws of the United States.) (citations omitted).

Paragraphs 76 to 79 are directed at Defendant Bauer, and claim that: (1) "[s]ince 2004 to present, Plaintiff has sent numerous cop-outs, his 1984 medical records, and other documents to Captain Bauer regarding Mr. Nichols' serious medical issues" and (2) "Captain Bauer is well informed on this issue and had taken an active part directly, and through those he supervises, in depriving and denying Plaintiff proper medical care are relief."  Mr. Nichols attempts to impose liability on Defendant Bauer based on a theory of *respondeat superior* by alleging that he acted in his role as "supervisor."  (*See, e.g.*, doc. # 67 at ¶ 81; doc. # 86 at pp. 2-3 of 15 (Defendant Bauer "is in charge of ADX healthcare and has the authority and responsibility to see that inmate medical needs are properly dealt with");  p. 5 of 15 (Defendant Bauer is "failing to carry out his supervisory role to have Plaintiff examined, diagnosed and treated by a licensed

medical doctor"); p. 7 of 15 (Defendant Bauer "failed in his supervisory role by creating or allowing a policy to exist to purposefully not order an ADX medical doctor to examine and diagnose Mr. Nichols' serious medical issues.")). As there is no *respondeat superior* liability for a *Bivens* claim, Mr. Nichols' allegations do not sufficiently state a claim based on personal participation against Defendant Bauer.

Further, to the extent that Mr. Nichols bases his Eighth Amendment claim against Defendant Bauer on his 1984 medical records, the submission of a 1984 medical record does not support a claim of deliberate indifference to serious medical needs. (*See* doc. # 100 at p. 9 of 13 ("As far as Captain Bauer, among other things, he was provided Mr. Nichol's 1984 medical records in 2007 – this alone should have been sufficient evidence for Bauer to act and have Plaintiff examined, diagnosed, and treated"); *see also* Exhibit 2 to "Plaintiff's Brief in Support of Order for Preliminary Injunction" (doc. # 9 at pp. 25-27 of 49)). *See Estelle v. Gamble*, 429 U.S. 97, 107 (1976) (noting that medical decision to forego one form of treatment, even one constituting malpractice, may be negligence but is not a constitutional violation); *Perkins v. Kansas Dept. of Corrections*, 165 F.3d 803, 811 (10th Cir. 1999) (disagreement with medical personnel "does not give rise to a claim for deliberate indifference to serious medical needs").

Paragraph 78 incorporates paragraphs 46 and 47, which bring only allegations against Warden Wiley and contain no allegations of fact with respect to Defendant Bauer. Paragraph 79 incorporates paragraphs 1 through 29 and 62 through 78. However, paragraphs 1 through 29 are introductory and contain no allegations of fact

regarding specific actions taken by Defendant Jones or Bauer. Paragraphs 62 through 75 are directed at Defendant Nafziger only and do not mention Defendant Jones or Bauer. There are also no allegations that Defendant Jones or Bauer acted or failed to act with deliberate or reckless disregard of Mr. Nichols' dietary needs.

Mr. Nichols' "minimal" allegations do not set forth sufficient facts to show personal participation by these two Defendants. Mr. Nichols makes nothing more than conclusory assertions which fail to state a claim. Without specific allegations, a *Bivens* claim for money damages against an individual cannot survive. *See Iqbal*, 129 S.Ct. at 1949 ("the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). Defendants Jones and Bauer are properly dismissed from Claim One, the only claim in which they are named, and thus from this civil action, for failure to state a claim upon which relief can be granted.

VI.     Motion to Dismiss by Defendant Nafziger

Mr. Nichols alleges in Claim One that Defendant Nafziger: (1) denied or refused his requests in 2006 to see a physician and in 2008 "to be examined by an outside specialist in colorectal issues (a proctologist);" (2) offered to place Mr. Nichols on the "new modified" Common Fare diet; (3) deprived Mr. Nichols of a diet of high fiber and whole unrefined foods; and (4) is "failing to carry out a physician's duty of care to examine, diagnose, and treat Plaintiff." (*See* doc. # 67 at ¶¶ 62-75). Mr. Nichols

concurs that Claims Two and Three do not apply to Defendant Nafziger, as he has not made any allegations against him in those claims.  (*See* doc. # 87 at pp. 2-3 of 9).

Dr. Nafziger was previously the Clinical Director at the BOP, but is no longer employed by the BOP.  (*See* Declaration of C. Synsvoll (doc. # 76-1)).  As a claim against a federal employee in his official capacity is in essence a claim against the agency, once such employee is no longer employed by the agency, there is no "official capacity" under which to pursue official capacity injunctive relief against him.  *See, e.g., Tara Enterprises, Inc. v. Humble*, 622 F.2d 400, 401 (8th Cir. 1980) (regarding claim against former City Attorney and Police Chief, where "monetary damages are not sought nor any other relief which would be operative against these defendants who no longer possess any official power, the action against them is, of course, moot")*; Blackburn v. Goodwin*, 608 F.2d 919, 925 (D.C. Cir. 1979) (dismissing official capacity claim for injunctive relief where defendant was no longer in the position he held when the actions at issue occurred and thus did "not have the official capacity necessary to enable him to comply with the injunctive relief sought").  Mr. Nichols concedes that the official capacity claim against Defendant Nafziger must be dismissed.  (*See* doc. # 87 at p. 3 of 9).  Thus, with Mr. Nichols' agreement, the official capacity claim against Dr. Nafziger may properly be dismissed for failure to state a claim upon which relief can be granted.  Defense counsel concedes that Dr. Allred, the current Clinical Director of ADX, is properly substituted in his official capacity only for the official capacity claim alleged against Defendant Nafziger.  (*See* doc. # 95 at pp. 3-4 of 8).

Mr. Nichols' allegations are also insufficient to state a claim against Defendant Nafziger in his individual capacity. Mr. Nichols bases his Eighth Amendment claim against Defendant Nafziger on his 1984 medical records and two requests to see an outside specialist. (*See* doc. # 67 at pp. 14-15 of 34, ¶¶ 64, 66, 69; doc. # 87 at p. 6 of 9 ("Submission of Mr. Nichols' 1984 medical records alone should have been enough facts for Dr. Nafziger to draw and inference that substantial harm exists and treatment required.").

First, Mr. Nichols' submission of a 1984 medical record to Defendant Nafziger does not provide a sufficient basis to hold Defendant Nafziger liable under the Eighth Amendment for deliberate indifference to Mr. Nichol's serious medical need. The mere fact that a physician previously provided Mr. Nichols with some treatment in 1984 does not render the decisions of Defendant Nafziger deliberate indifference. *See Sonds v. St. Barnabas Hosp. Correctional Health Services*, 151 F. Supp. 2d 303, 312 (S.D.N.Y. 2001) ("[D]isagreements over medications, diagnostic techniques, forms of treatment, the need for specialists, and the timing of their intervention implicate medical judgments and not the Eighth Amendment.") (citing *Estelle*, 429 U.S. at 107).

Second, to the extent that Mr. Nichols is alleging that Defendant Nafziger denied his two requests made in 2008 to be examined by an outside specialist, the "contention that he was denied treatment by a specialist is . . . insufficient to establish a constitutional violation." *Duffield v. Jackson*, 545 F.3d 1234, 1239 (10th Cir. 2008) (internal quotation marks and citation omitted). "The decision that a patient's condition requires a specialist is a decision about the patient's course of treatment, and 'negligent

diagnosis or treatment of a medical condition do[es] not constitute a medical wrong under the Eighth Amendment.'" *Id.* at 1239 (quoting *Ramos v. Lamm*, 639 F.2d 559, 575 (10th Cir. 1980)). Further, to the extent that Mr. Nichols alleges that his request to Defendant Nafziger to be examined by an outside specialist was referred to the ADX supervisory Chaplin, there is no *respondeat superior* liability for a *Bivens* claim and this allegation does not state a claim based on personal participation against Defendant Nafziger. *See Sealey v. Giltner*, 116 F.3d 47, 51 (2d Cir. 1997) (defendant not personally involved in alleged constitutional violation where he only referred plaintiff's complaint to a subordinate for decision). Nor has Mr. Nichols alleged any facts to show that Defendant Nafziger acted with deliberate indifference. (*See* doc. # 67 at p. 16 of 34, ¶ 75 (alleging that Defendant Nafziger is "failing to carry out a physician's duty of care to examine, diagnose, and treat Plaintiff."). Mr. Nichols' claim sounds in negligence, which is insufficient to state a claim under the Eighth Amendment. *Estelle*, 429 U.S. at 106. As Mr. Nichols' allegations do not state a claim for which relief can be granted against Defendant Nafziger under Claim One, the only claim in which he is named, Defendant Nafziger is properly dismissed from this civil action.

VII.    Motion to Dismiss by Defendant Powley

        In Claim Two, Mr. Nichols alleges that Defendant Powley (1) "discriminated against and arbitrarily removed" him from the Common Fare diet on March 3, 2006; and (2) failed to provide him with a comparable alternative to the Common Fare diet (*See* doc. # 67 at pp. of 34, ¶¶ 114, 117, 121). Claim Three alleges a RFRA claim,

incorporating by reference the factual allegations of Claim Two. (*See id.* at p. 29 of 34). Mr. Nichols concedes that "[a]s to Claim One [he] does not name Mr. Powley in it thus it does not apply." (*See* doc. # 93 at p. 2 of 32). Defendant Powley argues that Mr. Nichols has not alleged conduct sufficient to state a constitutional violation. The court agrees.

First, Mr. Nichols' allegation that "[f]rom January to March 2005 Plaintiff communicated several times with Chaplain Powley and Assistant Dave Law regarding Plaintiff's dietary needs based upon his understanding of Scripture and his sincere beliefs" does not state a constitutional violation. (*See* doc. # 67 at p. 23 of 34, ¶ 112; *see also* doc. # 93 at p. 10 of 32 ("Plaintiff can show, in later proceedings, request to staff (a.k.a. cop-outs to Chaplin Powley and BOP forms with Powley's own signature . . . .)). *See Whitington*, 307 Fed. Appx. at 193 ("the denial of . . . grievances alone is insufficient to establish personal participation in the alleged constitutional violations") (internal quotation marks and citation omitted). To the extent that Mr. Nichols alleges that Defendant "Powley's acts and omissions directly contribute to exacerbating Plaintiff's medical issues" (*see* doc. # 67 at p. 24 of 34, ¶ 119), Mr. Nichols has not brought his Eighth Amendment claim against Defendant Powley. Nor has Mr. Nichols alleged facts to show that Defendant Powley acted with deliberate indifference. His allegations that Defendant Powley "discriminated against and arbitrarily removed Plaintiff from CF" does not rise to deliberate indifference. (*See* doc. # 67 at p. 23 of 34, ¶ 114; *see also* ¶¶ 121-22). Mr. Nichols makes several conclusory allegations that Defendant Powley "knew" or "should have known" that the former Common Fare diet

"most closely met" his religious dietary needs.  (*See* doc. # 67 at pp. 23-24 of 34, ¶¶ 115-18).  Such conclusory allegations do not present an adequate factual basis for personal participation by Defendant Powley in the alleged violation of Mr. Nichols' constitutional rights.  As Mr. Nichols' allegations do not state a claim for which relief can be granted against him, Defendant Powley is properly dismissed from Claim Two of this civil action.

VIII.    Motion to Dismiss by Defendant BOP

A.    Claim One: Eighth Amendment Claim

Mr. Nichols brings an Eighth Amendment claim based on his perceived lack of insoluble fiber in his diet.  With respect to the BOP, Mr. Nichols alleges in Claim One: (1) the BOP has created a policy, or allowed one to exist, "to not diagnose nor document serious chronic medical issues of Plaintiff's, et al., as a means to cut costs and/or punish inmates" and the BOP has refused to examine, diagnose, and provide proper medical care to Plaintiff;  (2) the BOP has created a policy, or allowed one to exist "to not allow Food Service to serve more whole unrefined foods" and that the BOP is "deliberately indifferent to and depriving Plaintiff of a high fiber meal program of refined whole foods that he documented as medically required;" (3) he sent his 1984 medical records to BOP and has sent cop-outs to staff that have been denied without any medical examination; (4) he has "received no medical care from BOP/ADX that addresses his continual pain and suffering."  (*See* doc. # 67 at pp. 9-10 of 34).

The Eighth Amendment prohibits the infliction of "cruel and unusual punishments." U.S. CONST. Amend. VIII.  "[T]he treatment a prisoner receives in prison

and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (citation omitted). Certain conditions of confinement, if they inflict pain unnecessarily and wantonly, may constitute cruel and unusual punishment under the Eighth Amendment. *Whitley v. Albers*, 475 U.S. 312, 319 (1986). The Eighth Amendment prohibits prison officials from being deliberately indifferent to the serious medical needs of prisoners in their custody. *See Estelle*, 429 U.S. at 104-06 ("[D]eliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain' proscribed by the Eighth Amendment.") (internal quotation marks and citation omitted).

An Eighth Amendment claim involves "a two-pronged inquiry, comprised of an objective component and a subjective component." *Self v. Crum*, 439 F.3d 1227, 1230 (10th Cir. 2006). "Under the objective inquiry, the alleged deprivation must be sufficiently serious to constitute a deprivation of constitutional dimension." *Self*, 439 F.3d at 1230 (internal quotation marks and citation omitted). Under the subjective inquiry, the defendant must have acted with a "sufficiently culpable state of mind." *Wilson v. Seiter*, 501 U.S. 294, 298 (1991). An inmate's complaint of inadequate medical care amounts to an Eighth Amendment claim if the inmate alleges "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle*, 429 U.S. at 106. To meet the subjective component of an Eighth Amendment claim, a plaintiff must establish the defendant "knew he faced a substantial risk of harm and disregarded that risk, 'by failing to take reasonable measures to abate it.'" *Hunt v. Uphoff*, 199 F.3d 1220, 1224 (10th Cir. 1999) (quoting *Farmer*, 511 U.S. at

847).  For a prison official to be found liable of deliberate indifference under the Eighth

Amendment, "the official must 'know[] of and disregard[] an excessive risk to inmate

health and safety; the official must both be aware of facts from which the inference

could be drawn that a substantial risk of harm exists, and he must draw the inference.'"

*Perkins*, 165 F.3d at 809 (quoting *Farmer*, 511 U.S. at 837).

The BOP argues that Mr. Nichols fails to state a claim for relief under the Eighth

Amendment, as his allegations do not meet the standards to show a deprivation of

humane conditions of confinement or deliberate indifference to his serious medical

needs.

"[C]ourts have held that denial of a medically required diet may constitute an

Eighth Amendment violation."  *Mandala v. Coughlin*, 920 F. Supp. 342, 353 (E.D.N.Y.

1996) (citing *Johnson v. Harris*, 479 F. Supp. 333 (S.D.N.Y.1979) (denial of a medically

required diet to a prisoner suffering from diabetes violated his constitutional rights)).

Mr. Nichols bases his Eighth Amendment claim for increased amounts of insoluble fiber

on "his 1984 medical records documenting Plaintiff's serious chronic medical issues,

surgery, and need for a high fiber diet."  (*See* doc. # 67 at p. 5 of 34 ¶¶ 10-11, p. 11 of

34; Exhibit 2 to "Plaintiff's Brief in Support of Order for Preliminary Injunction" (doc. # 9

at pp. 25-27 of 49)).  However, Mr. Nichols does not allege that he was at any time on a

therapeutic diet prescribed by a healthcare provider.  Mr. Nichols' personal

interpretation of his serious medical need based on his 1984 medical records does not

provide an adequate basis for his Eighth Amendment claim.

Mr. Nichols bases his Eighth Amendment claim on his self-diagnosis. (*See* doc. # 67 at p. 8 of 34, ¶ 23 ("Mr. Nichols knows from years of personal experience and extensive research that his current symptoms are due to the lack of insoluble fiber in his daily diet due to refined foods."). Mr. Nichols' self-diagnosis of the need for increased amounts of insoluble fiber are insufficient to support a claim for violation of the Eighth Amendment. *See Word v. Croce*, 169 F. Supp. 2d 219, 226 (S.D.N.Y. 2001) (plaintiff's self-diagnosis insufficient to support a medical condition requiring a special diet).

To the extent that Mr. Nichols alleges failure to follow the "U.S. Government Food Pyramid guidelines" (*see* doc. # 67 at p. 13 of 34 ¶ 53) [and] BOP food policies" (*see* doc. # 86 at p. 2 of 15), the Constitution does not require adherence to nutritional guidelines or Bureau policy. *See Hovater v. Robinson*, 1 F.3d 1063, 1068 n. 4 (10th Cir. 1993) (a prison official's "failure to adhere to administrative regulations does not equate to a constitutional violation"); *Gaines v. Stenseng*, 292 F.3d 1222, 1225 (10th Cir. 2002) ("To the extent [plaintiff] seeks relief for alleged violations of state statutes and prison regulations, however, he has stated no cognizable claim" for deprivation of a right secured by the Constitution or laws of the United States.) (citations omitted).

To the extent that Mr. Nichols is alleging lack of treatment for his condition, whether a course of treatment is appropriate "is a classic example of a matter for medical judgment," that is insufficient to sustain a claim under the Eighth Amendment. *Estelle*, 429 U.S. at 107 (noting that medical decision to forego one form of treatment may be negligence but is not a constitutional violation). Defendants' failure to provide the treatment Mr. Nichols seeks based on his 1984 medical records does not rise to

deliberate indifference to serious medical need. *See Perkins*, 165 F.3d at 811

(disagreement with medical personnel "does not give rise to a claim for deliberate

indifference to serious medical needs"); *Olson v. Stotts*, 9 F.3d 1475, 1477 (10th Cir.

1993) ("[a] difference of opinion does not support a claim of cruel and unusual

punishment"); *Ramos*, 639 F.2d at 575 (difference of opinion between inmate and

prison medical staff regarding treatment or diagnosis does not itself state a

constitutional violation). Nor has Mr. Nichols adequately pled any facts to show that

Defendants acted with the necessary culpable state of mind of deliberate indifference.

There are no allegations regarding the states of mind of the Defendants in Claim One.

In sum, Mr. Nichols has no constitutional right to a diet of his choice. Regarding

the food provided at ADX, Mr. Nichols fails to allege deliberate indifference to his

serious medical needs as required under the Eighth Amendment. Thus, Claim One is

properly dismissed for failure to state a claim upon which relief can be granted.


B.    First Amendment and RFRA Claims

Mr. Nichols makes both a First Amendment free exercise claim and a statutory

claim under RFRA. With respect to the BOP, Mr. Nichols alleges in Claim Two: (1) that

the "old" Common Fare diet met Mr. Nichols' religious needs but that he was "arbitrarily

removed" from it in March 2006 and that no comparable alternative was offered to him;

(2) in January 2008, Plaintiff requested to be seen by a medical specialist, but the BOP

offered to place him back on the Common Fare diet instead; (3) in March 2008, the

BOP introduced a "new" Common Fare diet "consisting of numerous dead and refined

foods" that "doesn't even come close to meeting Plaintiff's religious beliefs nor needs;" (4) the BOP has created a policy or custom of allowing "illegal acts" to exist at the ADX; and (5) that the BOP "violates Plaintiff's First Amendment right of his free exercise of religion by discriminating against him and forcing him to consume refined and dead foods" and by failing to provide him with an alternative meal program of "whole unrefined and living foods." (*See* doc. # 67 at pp. 21-23 of 34). Claim Three alleges a RFRA claim, incorporating by reference the factual allegations of Claim Two. (*See id*. at p. 29 of 34).

"It is well-settled that '[i]nmates . . . retain protections afforded by the First Amendment, including its directive that no law shall prohibit the free exercise of religion.'" *Kay v. Bemis*, 500 F.3d 1214, 1218 (10th Cir. 2007) (quoting *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987)). "Yet such protections are not without reasonable limitations." *Kay*, 500 F.3d at 1218. "The Supreme Court has cautioned that prison inmates are also subject to the 'necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system.'" *Kay*, 500 F.3d at 1218 (quoting *O'Lone*, 482 U.S. at 348). *See also Overton v. Bazzeta*, 539 U.S. 126, 131 (2003) ("An inmate does not retain rights inconsistent with proper incarceration."). "Accordingly, the Court has held that 'a prison regulation imping[ing] on inmates' constitutional rights . . . is valid if it is reasonably related to legitimate penological interests.'" *Id*. at 1218. *See also Gallagher v. Shelton*, 587 F.3d 1063, 1069 (10th Cir. 2009) ("What constitutes a 'reasonable opportunity' is determined in reference to legitimate penological objectives.") (quoting *Makin v. Colo. Dep't. of*

33

*Corr.*, 183 F.3d 1205, 1209 (10th Cir. 1999)); *Hammons v. Saffle*, 348 F.3d 1250, 1254-55 (10th Cir. 2003) ("Inmates' free exercise rights are . . . subject to prison restrictions rationally related to legitimate penological interests."). Prison administrators, not the courts, should "make the difficult judgments concerning institutional operations . . . ." *Turner v. Safley*, 482 U.S. 78, 89 (1987). *See also Shaw v. Murphy*, 532 U.S. 223, 229-30 (2001) (in the First Amendment context "some rights are simply inconsistent with the status of a prisoner or 'with the legitimate penological objectives of the corrections system'") (quoting *Pell v. Procunier*, 417 U.S. 817, 822 (1974)).

"Thus, in order to allege a constitutional violation based on a free exercise claim, a prisoner-plaintiff must survive a two-step inquiry." *Kay*, 500 F.3d at 1218. "First, the prisoner-plaintiff must first [sic] show that a prison regulation 'substantially burdened . . . sincerely-held religious beliefs.'" *Kay*, 500 F.3d at 1218 (quoting *Boles v. Neet*, 486 F.3d 1177, 1182 (10th Cir. 2007)). "Consequently, '[t]he first questions in any free exercise claim are whether the plaintiff's beliefs are religious in nature, and whether those religious beliefs are sincerely held.'" *Kay*, 500 F.3d at 1218 (quoting *Snyder v. Murray City Corp.*, 124 F.3d 1349, 1352 (10th Cir. 1997)). "Second, prison officials-defendants may 'identif[y] the legitimate penological interests that justif[ied] the impinging conduct.'" *Kay*, 500 F.3d at 1218 (quoting *Boles*, 486 F.3d at 1182). "The burden then returns to the prisoner to 'show that these articulated concerns were irrational.' " *Kay*, 500 F.3d at 1219 n. 2 (quoting *Salahuddin v. Goord*, 467 F.3d 263, 275 (2d Cir. 2006)).

"At that point, courts balance the factors set forth in *Turner v. Safley*, 482 U.S. 78, 89-91 (1987), to determine the reasonableness of the regulation: (1) whether a rational connection exists between the prison policy regulation and a legitimate governmental interest advanced as its justification; (2) whether alternative means of exercising the right are available notwithstanding the policy or regulation; (3) what effect accommodating the exercise of the right would have on guards, other prisoners, and prison resources generally; and (4) whether ready, easy-to-implement alternatives exist that would accommodate the prisoner's rights.

*Kay*, 500 F.3d at 1219 (citation omitted).

"RFRA goes beyond the protections offered by the First Amendment." *O Centro Espirita Beneficiente Unaio Do Vegetal v. Ashcroft*, 389 F.3d 973, 992 (10th Cir. 2004). To establish a *prima facie* RFRA claim, a prisoner must show that the federal government substantially burdened the prisoner's sincere exercise of religion. *Kikumura v. Hurley*, 242 F.3d 950, 960 (10th Cir. 2001). The burden then shifts to defendants to show that application of the regulation (1) is in furtherance of a compelling governmental interest and (2) is the least restrictive means of furthering that interest. *Id*. at 961-62. The RFRA analysis differs from the First Amendment free exercise analysis in that once the prisoner makes a *prima facie* RFRA case, defendants must show that they have a compelling reason to apply the challenged regulation which is the least restrictive to plaintiff. Under the First Amendment, defendants must only demonstrate that the regulation is reasonably related to legitimate penological interests. *Kikumura*, 242 F.3d at 962.

Initially, the court notes that the Supreme Court has not expressly extended *Bivens* liability to First Amendment claims. In *Iqbal*, the Supreme Court noted that in *Bush v. Lucas*, 462 U.S. 367 (1983), it had "declined to extend *Bivens* to a claim

sounding in the First Amendment." 129 S. Ct. at 1948. However, because "Petitioners [did] not press this argument" the Court "assume[d], without deciding, that respondent's First Amendment claim is actionable under *Bivens*." *Iqbal*, 129 S. Ct. at 1948. *See also Malesko*, 534 U.S. at 68 (declining to extend *Bivens* "into any new context"); *Patel*, 515 F.3d at 813 n. 6 (8th Cir. 2008) ("We have never found a *Bivens* action to extend to a Free Exercise claim, and it is doubtful that we would do so. Nevertheless, we will assume without deciding that a *Bivens* action exists for a Free Exercise claim.") (citation omitted).

Assuming without deciding that *Bivens* would extend to a First Amendment claim, the court next examines whether Mr. Nichols has pled a plausible First Amendment claim. The Tenth Circuit has recognized "that prisoners have a constitutional right to a diet conforming to their religious beliefs." *Beerheide v. Suthers*, 286 F.3d 1179, 1185 (10th Cir. 2002). Nevertheless, "simplified food service, security, and budget constraints are legitimate penological interests." *Williams v. Morton*, 343 F.3d 212, 217 (3d Cir. 2003) (citations omitted).

Mr. Nichols identifies his religion as "Christian" since June 1996. (*See* doc. # 67 at p. 6 of 34, ¶ 15). Mr. Nichols alleges that under his Christian faith, he "sincerely believes that God created mankind to consume unrefined whole-grains and living foods with its natural insoluble fiber intact to work in a synergistic way to keep Plaintiff's body, *i.e.*, God's holy temple, in good health to ward off diseases." (*See* doc. # 67 at pp. 6-7 of 34 ¶17). Mr. Nichols alleges that BOP inmates are currently provided "five meal options: Regular, No Meat, No Pork, Heart Healthy, and Common Fare." (*See* doc. #

67 at p. 20 of 34 n. 20). Mr. Nichols alleges that the Common Fare diet was satisfactory from April 1995 to March 2008. (*See* doc. # 67 at p. 21 of 34, ¶ 99). Mr. Nichols alleges that he was removed from the Common Fare meal plan on March 2, 2006. (*See* doc. # 67 at p. 21 of 34, ¶ 101). Mr. Nichols alleges that ADX staff offered to put him on the Common Fare meal plan in January 2008, but that the Common Fare plan had been changed. (*See* doc. # 67 at p. 21 of 34, ¶¶ 104-05). Mr. Nichols alleges that the current Common Fare meals consist of

> Limited cooked vegetables, 4 types - peeled potatoes, peeled carrots, peas and green beans. A V-8 type tomato juice drink that is refined and dead. Refined grain products such as: white rice, various types of pastas, some packaged cereals and snack treats. And portion sizes are small. No longer any fresh raw unpeeled vegetables nor wide variety. The only whole grain is the bread and some cereal. The hot items all come pre-packaged.

(*See* doc. # 67 at p. 22 of 34, n. 21). Mr. Nichols alleges that "[t]here is not enough 100% whole-grain foods, fresh raw unpeeled vegetables and fresh unpeeled fruits in any of the 5 meal options for Plaintiff to subsist on so he is compelled to consume much refined and dead foods daily." (*See* doc. # 67 at p. 7 of 34, ¶ 21; *see also* p. 20 of 34, ¶ 96 "none of the current meal options ADX offers provide near enough unrefined and living foods.").

The BOP argues that Mr. Nichols fails to state a claim for relief under either the First Amendment or RFRA. The BOP argues that Mr. Nichols' allegations do not meet the standards to show a sincerely held religious belief, a substantial burden on the exercise of his religion, or that the limitations on his diet are not reasonably related to legitimate penological objectives. The Tenth Circuit uses the same "substantial burden"

test to evaluate RFRA and First Amendment free exercise prisoner claims. *Wares v. Simmons*, 524 F. Supp. 2d 1313, 1320 n. 9 (D. Kan. 2007). A "substantial burden" is one that (1) significantly inhibits or constrains plaintiff's religious conduct or expression, (2) meaningfully curtails plaintiff's ability to express adherence to his faith or (3) denies plaintiff reasonable opportunity to engage in fundamental religious activities. *Id.* at 1320. If plaintiff fails the "substantial burden" test, the inquiry ends.

First, the court believes Defendants' arguments regarding the sincerity of Mr. Nichols' beliefs and the lack of a substantial burden on the exercise of his religion cannot be resolved at this stage of the case. Mr. Nichols alleges that "[a]ll five meal programs at ADX contain numerous refined and dead foods placing an impossible burden on Plaintiff to adhere to his sincerely held religious beliefs." (*See* doc. # 67 at p. 20 of 34, ¶ 97). The Free Exercise Clause protects even those beliefs that are not well accepted within a religion. *See Callahan v. Woods*, 658 F.2d 679, 685 9th Cir. (1981) ("In applying the free exercise clause of the First Amendment, courts may not inquire into the truth, validity, or reasonableness of a claimant's religious beliefs . . . Callahan's interpretation of the scriptures may differ from the meaning members of his church generally find in that text, but such disagreement cannot itself invalidate his free exercise right."). *See also Kay*, 500 F.3d at 1220 ("[A] prisoner's belief in religious dietary practices is constitutionally protected if the belief is genuine and sincere, even if such dietary practices are not doctrinally required by the prisoner's religion.") (internal quotation marks and citation omitted). "The inquiry into the sincerity of a free-exercise plaintiff's religious beliefs is almost exclusively a credibility assessment, . . . and

38

therefore the issue of sincerity can rarely be determined on summary judgment," let alone a motion to dismiss. *Kay*, 500 F.3d at 1219 (internal quotation marks and citation omitted). "We have said that summary dismissal on the sincerity prong is appropriate only in the very rare case[ ] in which the plaintiff's beliefs are so bizarre, so clearly nonreligious in motivation that they are not entitled to First Amendment protection." *Id*. at 1219-20 (internal quotation marks and citation omitted). On the record before it, the court cannot say that Mr. Nichol's dietary adherence is not rooted in religious belief. Thus, a determination of the sincerity of Mr. Nichols' beliefs appears to be "unwarranted" at this time *Kay*, 500 F.3d at 1220 (citations omitted).

Relying on Mr. Nichols' verified SAC, it is a possible inference that the current meal options at ADX place a substantial burden on the exercise of his religion by leaving him no choice but to eat a diet in violation of his sincerely held beliefs. At this stage of the litigation, there is no information before the court regarding the full extent of foods available under the meal plans at ADX or Mr. Nichols' alternatives, such as purchasing the appropriate foods through the prison commissary.

Further, there is no evidence in the record before the court at this time regarding the Defendants' argument that Mr. Nichols' allegations are not sufficient to demonstrate that the current meal options are not reasonably related to legitimate penological objectives. Without record support, this court cannot conclude that the meal options were justified by security, budget, or any other valid penological interest. *See, e.g., Boles*, 486 F.3d at 1183 ("At this stage of the litigation, however, the uncontroverted factual allegations viewed in the light most favorable to Boles show that Warden Neet

placed substantial burdens on Boles's free exercise rights with no valid penological justification.").

In sum, the court concludes that factual matters remain as to whether the ADX meal plan options substantially burden Mr. Nichols' sincerely held religious beliefs and whether they are justified by legitimate penological interests.

Accordingly, IT IS RECOMMENDED that:

1.      The "Motion to Dismiss the Second Amended Complaint by Director Lappin and Regional Director Nalley Pursuant to Fed. R. Civ. P. 12(b)(1), 12(b)(2), and 12(b)(6)" (filed September 21, 2009) (doc. # 68) be GRANTED and that: (1) Mr. Nichols' claims for damages against the individual Defendants in their official capacities pursuant to *Bivens* be dismissed with prejudice for lack of subject matter jurisdiction; and (2)  Defendants Lappin and Nalley be dismissed from this civil action with prejudice for lack of personal jurisdiction.

2.      The "Motion to Dismiss the Second Amended Complaint by Ron Wiley Pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6)" (filed September 30, 2009) (doc. # 72) be GRANTED IN PART AND DENIED IN PART and Defendant Wiley in his individual capacity be dismissed from Claims One and Two pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim for which relief can be granted.

3.      "Motion to Dismiss the Second Amended Complaint by Derrick Jones and Ron Bauer Pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6)" (filed September 30, 2009) (doc. # 73) be GRANTED and Defendants Jones and Bauer in their individual capacities be dismissed from Claim One, the only claim in which they are named, and

thus be dismissed from this civil action for failure to state a claim upon which relief can be granted.

4.      "Motion to Dismiss the Second Amended Complaint by Steven Nafziger (Official Capacity Only) Pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6)" (filed September 30, 2009) (doc. # 76) be GRANTED and Defendant Nafziger in both his individual and official capacities be dismissed from Claim One, the only claim in which he is named, and thus be dismissed from this civil action for failure to state a claim upon which relief can be granted.

5.      "Motion to Dismiss the Second Amended Complaint by the Federal Bureau of Prisons Pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6)" (filed September 30, 2009) (doc. # 74) be GRANTED IN PART AND DENIED IN PART and that Claim One be dismissed.[4]

6.      "Motion to Dismiss the Second Amended Complaint by Keith Powley Pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6)" (filed October 26, 2009) (doc. # 83) be GRANTED and Defendant Powley in his individual capacity be dismissed from Claim Two for failure to state a claim upon which relief can be granted.

7.      This civil action shall proceed on Claim Two against Defendant BOP and on Claim Three against Defendant BOP and Defendants Powley and Wiley in their official capacities only.

---

[4]      As the court recommends dismissal of Claim One, Dr. Allred, the current Clinical Director of ADX, need not be substituted in his official capacity for the official capacity claim against Defendant Nafziger made in Claim One.  (*See* this Recommendation, *supra.,* at p. 25 of 43).

**Advisement to the Parties**

Within fourteen days after service of a copy of the Recommendation, any party may serve and file written objections to the Magistrate Judge's proposed findings and recommendations with the Clerk of the United States District Court for the District of Colorado. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995). A general objection that does not put the District Court on notice of the basis for the objection will not preserve the objection for *de novo* review. "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review." *United States v. One Parcel of Real Property Known As 2121 East 30th Street, Tulsa, Oklahoma*, 73 F.3d 1057, 1060 (10th Cir. 1996). Failure to make timely objections may bar *de novo* review by the District Judge of the Magistrate Judge's proposed findings and recommendations and will result in a waiver of the right to appeal from a judgment of the district court based on the proposed findings and recommendations of the magistrate judge. *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999) (District Court's decision to review a Magistrate Judge's recommendation *de novo* despite the lack of an objection does not preclude application of the "firm waiver rule"); *International Surplus Lines Insurance Co. v. Wyoming Coal Refining Systems, Inc*., 52 F.3d 901, 904 (10th Cir. 1995) (by failing to object to certain portions of the Magistrate Judge's order, cross-claimant had waived its right to appeal those portions of the ruling); *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (by their failure to file objections, plaintiffs waived their right to appeal the

Magistrate Judge's ruling).  *But see, Morales-Fernandez v. INS*, 418 F.3d 1116, 1122

(10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require

review).

    DATED at Denver, Colorado, this 22nd day of June, 2010.

                BY THE COURT:


                 s/Craig B. Shaffer          
                United States Magistrate Judge