**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**Judge Christine M. Arguello**

Civil Action No. 09-cv-00558-CMA-CBS

TERRY L. NICHOLS,

      Plaintiff,

v.

FEDERAL BUREAU OF PRISONS,
HARLEY LAPPIN,
MICHAEL NALLEY,
RON WILEY,
ROD BAUER,
DR. STEVEN NAFZIGER, M.D.,
DERRICK JONES, and
KEITH POWLEY,

      Defendants.

_____

**ORDER ADOPTING IN PART AND OVERRULING IN PART THE JUNE 22, 2010**
**RECOMMENDATION OF A UNITED STATES MAGISTRATE JUDGE AND ORDER**
**DISMISSING ALL CLAIMS**

_____

This matter is before the Court on the June 22, 2010 Recommendation of

Magistrate Judge Craig B. Shaffer.  (Doc. # 107.)  Plaintiff objects to the Magistrate

Judge's Recommendation regarding his Eighth Amendment claims (Doc. # 108) and the

Court has conducted the requisite *de novo* review of Plaintiff's objections.  *See*

*Summers v. State of Utah*, 927 F.2d 1165, 1167 (10th Cir. 1991).  Plaintiff does not

object to the Magistrate Judge's conclusions with regard to his claims under the First

Amendment and the Religious Freedom Restoration Act ("RFRA"), 42 U.S.C. § 2000bb

to bb-4 and none of the Defendants filed objections to the Recommendation.  The

Court may review portions of the Recommendation that were not objected to under

any standard it deems appropriate.  *Id.* (citing *Thomas v. Arn*, 474 U.S. 140, 150, 154

(1985)).  As discussed below, the Court affirms and adopts, in part, and overrules, in

part, the Magistrate Judge's Recommendation.  Plaintiff's claims are dismissed.

## I.  BACKGROUND AND PROCEDURAL HISTORY

The Court discusses only those facts that are necessary to address the

Recommendation and Plaintiff's Objections to the Recommendation.  A more detailed

recitation of the factual and procedural background is set out in the Magistrate Judge's

Recommendation.  (Doc. # 107.)

Plaintiff, Terry Nichols, is incarcerated at the U.S. Penitentiary Administrative

Maximum ("ADX") in Florence, Colorado, serving a life sentence.  On March 16, 2009,

Plaintiff filed his initial complaint, which he amended on two occasions.  On August 27,

2009, Plaintiff filed his Second Amended Complaint ("Complaint") alleging two claims

pursuant to *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403

U.S. 388 (1971), and one RFRA claim, against the Federal Bureau of Prisons ("BOP")

and seven employees of the BOP.  (Doc. # 67.)  The seven individually named

defendants are[1]: (1) Harley Lappin, Director of the BOP; (2) Michael Nalley, Regional

Director of the BOP; (3) Ron Wiley, Warden of the ADX; (4) Rod Bauer, Captain and

---

[1]   At the time Plaintiff filed his Complaint, all Defendants were employees of the BOP
in the listed position of employment.

ADX Healthcare Administrator; (5) Dr. Stephen Nafziger, ADX Clinical Services Director; (6) Derrick Jones, ADX Food Services Administrator; and (7) Keith Powley, ADX Chaplain. (*Id.* at 2-3.) Plaintiff is suing the BOP employees in their individual and official capacities in Claims One and Two, and in their official capacities in Claim Three.[2] (*Id.* at 3.) With respect to his claims against the BOP, Plaintiff requests injunctive relief only. (*Id.* at 2.)

Claim One, alleging cruel and unusual punishment in violation of Plaintiff's Eighth Amendment rights, is brought against the BOP and Defendants Lappin, Nalley, Wiley, Bauer, Nafziger, and Jones. (Doc. # 67 at 9-18.) Claim Two, alleging a violation of Plaintiff's right to free exercise of religion under the First Amendment, is brought against the BOP and Defendants Lappin, Nalley, Wiley, and Powley. (Doc. # 67 at 19-28.) Claim Three, alleging religious discrimination in violation of RFRA, is brought against the same defendants as in Claim Two, incorporating, by reference, the factual allegations of Claim Two. (*Id.* at 29.) All of the claims center on the purported insufficiency of whole unrefined and living foods high in insoluble fiber in Plaintiff's daily diet. (Doc. # 67.) Specifically, Plaintiff is seeking a daily diet with 100% whole grain foods, bran products, unpeeled and uncooked fruits and vegetables, and legumes and nuts. (*Id.* at 5.) He claims these foods are necessary for both his medical needs and

---

[2] The Court need not address claims for damages against BOP employee defendants in their official capacities because damages are barred by sovereign immunity, as conceded by Plaintiff. (Doc. # 80 at 3; Doc. # 81 at 3; Doc. # 86 at 3; Doc. # 87 at 3; Doc. # 93 at 3.) *See Hatten v. White* 275 F.3d 1208, 1210 (10th Cir. 2002).

his religious beliefs.  (*Id.* at 5-8.)  Plaintiff asserts that none of the current meal options are suitable for his medical and religious requirements.[3]  (*Id.* at 20.)

All eight Defendants moved to dismiss Plaintiff's claims against them.  (*See* Doc. ## 68, 72, 73, 74, 76, & 83.)  The Magistrate Judge recommended dismissal of Plaintiff's Eighth Amendment claim ("Claim One").  (Doc. # 107 at 40-41.)  He also recommended dismissal of Plaintiff's First Amendment claim ("Claim Two") against Defendants Lappin, Nalley, Wiley, and Powley.  (*Id.*)  Finally, the Magistrate Judge recommended dismissal of Plaintiff's RFRA claim ("Claim Three") against Defendants Lappin and Nalley.  (*Id.*)

On July 12, 2010, Petitioner filed Objections to the Recommendation.  (Doc. # 108.)  Specifically, Plaintiff objected to the Magistrate Judge's findings on the Eighth Amendment claim.  (*Id.* at 2-7.)  On July 26, 2010, Defendants filed a Response to Petitioner's Objections.  (Doc. # 109.)  Defendants argued that Petitioner's Objections should be overruled and the Magistrate Judge's Recommendation should be adopted.  (*Id.* at 1.)

---

[3]  The five meal options are: Regular, Vegetarian, No Pork, Heart Healthy, and Common Fare.  (Doc. # 67 at 20.)

## II.  STANDARDS OF REVIEW

### A.    *PRO SE* PLAINTIFF

The Plaintiff is proceeding *pro se*; thus, the Court must liberally construe his pleadings.  *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972).  However, the Court cannot act as an advocate for a *pro se* litigant, who must comply with the fundamental requirements of the Federal Rules of Civil Procedure.  *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

### B.    LACK OF PERSONAL JURISDICTION UNDER FED. R. CIV. P. 12(b)(2)

"Jurisdiction to resolve cases on the merits requires . . . authority over the parties (personal jurisdiction), so that the court's decision will bind them."  *Gadlin v. Sybron Int'l Corp.*, 222 F.3d 797, 799 (10th Cir. 2000) (quoting *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 577 (1999)).  "In determining whether a federal court has personal jurisdiction over a defendant, the court must determine (1) whether the applicable statute potentially confers jurisdiction by authorizing service of process on the defendant and (2) whether the exercise of jurisdiction comports with due process."  *Trujillo v. Williams*, 465 F.3d 1210, 1217 (10th Cir. 2006) (internal quotation marks and citation omitted).  A plaintiff bears the burden of establishing personal jurisdiction over defendants.  *See Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1069 (10th Cir. 2008) (citation omitted).  "Where . . . there has been no evidentiary hearing, and the motion to dismiss for lack of jurisdiction is decided on the basis of affidavits and other written material, the plaintiff need only make a prima facie showing that

5

jurisdiction exists." *Wenz v. Memery Crystal*, 55 F.3d 1503, 1505 (10th Cir. 1995)

(citations omitted).

The Tenth Circuit has "carefully and succinctly la[id] out the well-established

constitutional analysis for personal jurisdiction." *Benton v. Cameco Corp.*, 375 F.3d

1070, 1075 (10th Cir. 2004).

> The Due Process Clause protects an individual's liberty interest in not being subject to the binding judgments of a forum with which he has established no meaningful contacts, ties, or relations.  Therefore, a court may exercise personal jurisdiction over a nonresident defendant only so long as there exist minimum contacts between the defendant and the forum  state . . .
>
> The minimum contacts standard may be met in two ways.  First, a court may, consistent with due process, assert specific jurisdiction over a nonresident defendant if the defendant has purposefully directed his activities at residents of the forum, and the litigation results from alleged injuries that arise out of or relate to those activities.  Where a court's exercise of jurisdiction does not directly arise from a defendant's forum-related activities, the court may nonetheless maintain general personal jurisdiction over the defendant based on the defendant's business contacts with the forum state.

*OMI Holdings, Inc. v. Royal Ins. Co. of Canada*, 149 F.3d 1086, 1090-91 (10th Cir.

1998) (internal quotation marks and citations omitted).

## C.      FAILURE TO STATE A CLAIM UNDER FED. R. CIV. P. 12(b)(6)

The Court may dismiss a complaint for "failure to state a claim upon which

relief can be granted."  Fed. R. Civ. P. 12(b)(6).  "Dismissal is appropriate only if the

complaint, viewed in the light most favorable to the plaintiff, lacks enough facts to state

a claim to relief that is plausible on its face."  *United States ex rel. Connor v. Salina*

*Reg'l Health Ctr., Inc.*, 543 F.3d 1211, 1217 (10th Cir. 2008) (internal quotation marks

and citation omitted).  A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)).  Conclusory allegations alone are not sufficient to state a valid claim.  *Id.* at 1950; *see also Masters v. Gilmore*, 663 F. Supp. 2d 1027, 1037 (D. Colo. 2009).

## III.  ANALYSIS

## A.   LACK OF PERSONAL JURISDICTION OVER DEFENDANTS LAPPIN AND NALLEY

At the outset, the Court notes that the Magistrate Judge correctly concludes that all claims against Defendants Lappin and Nalley must be dismissed for lack of personal jurisdiction.[4]  Plaintiff alleges that Defendants Lappin and Nalley (1) were aware of Plaintiff's medical issues; (2) as supervisors, denied Plaintiff's grievances and appeals; (3) directed, knew of, allowed, and/or encouraged Defendant Wiley to cut the ADX budget; and (4) approved Plaintiff's placement on the Common Fare diet after denying his request to see a non-BOP proctologist.  (Doc. # 67 at 17-18, 26-28.)

"It is not reasonable to suggest that federal prison officials may be hauled into court simply because they have regional and national supervisory responsibilities over facilities within a forum state."  *Hill v. Pugh*, 75 F. App'x 715, 719 (10th Cir. 2003)

---

[4]   Plaintiff does not object to this portion of the Magistrate Judge's Recommendation (*see* Doc. # 108), so the Court reviews for clear error.  *See Summers v. State of Utah*, 927 F.2d 1165, 1167 (10th Cir. 1991) (citing *Thomas v. Arn*, 474 U.S. 140, 150, 154 (1985)).

(unpublished).  As the Magistrate Judge notes, receipt of grievances and letters is
insufficient to establish personal jurisdiction over the BOP Director.  *See id.*; *see also*
*Georgacarakos v. Wiley*, No. 07-cv-01712, 2008 WL 4216265, at *5 (D. Colo. Sept. 12,
2008) (unpublished) (finding that personal jurisdiction did not arise simply because
Defendant Lappin received notice of unconstitutional conditions); *see also Bradshaw*
*v. Lappin*, No. 08-cv-02542, 2010 WL 908925, at *1 (D. Colo. March 11, 2010)
(unpublished) (finding no personal jurisdiction where Defendant Lappin issued
generalized orders to cut costs).

Plaintiff does not allege that Defendants Lappin or Nalley conducted any
activities in Colorado or had any contact with him in Colorado.  (*See* Doc. # 80 at 3 (". . .
neither Defendant works nor lives nor physically entered Colorado . . .")).  To the extent
that Plaintiff alleges that Defendants Lappin or Nalley gave direction to other
Defendants, such allegations are speculative.  (*See* Doc. # 67 at 17-18, 26-28.)
Therefore, allegations against Defendants Lappin and Nalley for actions taken in their
supervisory roles, and their awareness and denial of Plaintiff's grievances are not
sufficient to establish personal jurisdiction.  Accordingly, the Magistrate Judge properly
recommended dismissal of all claims against Defendants Lappin and Nalley pursuant to
Fed. R. Civ. P. 12(b)(2).

## B.    CLAIM ONE: EIGHTH AMENDMENT CLAIM

In Claim One, Plaintiff alleges that the BOP and Defendants Lappin, Nalley,
Wiley, Bauer, Nafziger, and Jones violated Plaintiff's Eighth Amendment rights.  The

Magistrate Judge's Recommendation provides a detailed breakdown of Plaintiff's allegations against each Defendant.  (Doc. # 107 at 11-12, 16, 19-20, 23-24, 26-27, 28, 32-33.)  In sum, Plaintiff alleges that certain Defendants (1) were aware of his grievances (*id.* at 11, 12); (2) received and denied his cop-outs (*id.* at 11, 16, 19); (3) cut the ADX budget and/or encouraged the budget to be cut (*id.* at 11, 16); (4) as supervisors, failed to ensure medical care and approved policies which allow "illegal acts to exist" (*id.* at 11, 16); (5) were deliberately indifferent in depriving Plaintiff of a high fiber diet (*id.* at 16, 19, 23); (6) denied his requests to see a physician and, instead, placed him on a diet inconsistent with his needs (*id.* at 12, 23); and (7) created and/or allowed policies to exist which deprived Plaintiff of medical care and the daily diet he requests.  (*Id.* at 16, 28, 32-33).

The Magistrate Judge recommended dismissal of Plaintiff's Eighth Amendment claim in its entirety for failure to state a claim, pursuant to Fed. R. Civ. P. 12(b)(6). (*Id.* at 19, 23, 26, 32).  He recommended that Claim One be dismissed against the BOP and Defendant Nafziger for failure to state an Eighth Amendment Claim, and that it be dismissed as against Defendants Wiley, Jones, and Bauer for failure to state a claim due to lack of personal participation.[5]  (*Id.*)

In his objection, Plaintiff asserts that his allegations sufficiently state an Eighth Amendment claim.  (Doc. # 108 at 2-3, 6-7.)  Specifically, Plaintiff contends that he may

---

[5]   Because all claims against Defendants Lappin and Nalley are dismissed for lack of personal jurisdiction, the Court will not address Plaintiff's Eighth Amendment claim against them.

"bolster his claim" in responses and replies (*id.* at 4); that he was on a physician-prescribed diet and conditions of confinement prohibit further documentation of his medical condition (*id.* at 3-6); and that Defendant Nafziger acted with deliberate indifference when he referred Plaintiff to the Chaplain regarding a medical condition (*id.* at 4-5).  For the following reasons the Court adopts the Magistrate Judge's recommendation to dismiss Plaintiff's Eighth Amendment claim.

    1.    <u>Plaintiff's Contention That He May Clarify His Allegations In Later Filings</u>

In support of his contention that he may clarify his allegations in later filings, Plaintiff relies on *Erickson v. Pardus*,[6] and asserts that the Magistrate Judge's reliance on *Shanahan v. City of Chicago,*[7] for the opposite conclusion, is misplaced.  (Doc. # 107 at 20.)  The Court, however, disagrees with Plaintiff's interpretation of *Erickson*.

The Plaintiff in *Erickson* brought an action under 42 U.S.C. § 1983 because he was removed from a hepatitis C treatment.  *Erickson*, 551 U.S. at 89-90.  The district and appellate courts dismissed Erickson's claims because they found his allegations to be conclusory.  The Supreme Court disagreed and vacated the judgment, holding that the allegations in the complaint were sufficient to state a claim and satisfy Fed. R. Civ. P. 8(a)(2).  *See id.* at 94.  As an aside, the Supreme Court recognized that the Petitioner "bolstered his claim by making more specific allegations in documents **attached to the complaint** and in later filings."  *Id.* (emphasis added).

---

    [6]  551 U.S. 89 (2007).

    [7]  82 F.3d 776 (7th Cir. 1996).

In the instant case, Plaintiff did not bolster his claims with attachments to his complaint, but incorrectly argues he may do so in later filings.  According to the Tenth Circuit, "[t]he court's function on a 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's amended complaint alone is legally sufficient to state a claim for which relief can be granted." *Peterson v. Grisham*, 594 F.3d 723, 727 (10th Cir. 2010) (quoting *Miller v. Glanz*, 948 F.2d 1562, 1565 (10th Cir. 1991)).  For the reasons discussed below, Plaintiff's Eighth Amendment claim should be dismissed under Fed. R. Civ. P. 12(b)(6), for failure to state a claim.[8]

2.     Failure To State An Eighth Amendment Claim

The Eighth Amendment protects against the infliction of "cruel and unusual punishments."  U.S. CONST. Amend. VIII.  "[P]rison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care and must take reasonable measures to guarantee the safety of the inmates."  *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (internal quotation marks and citation omitted).  Conditions of confinement that unnecessarily and wantonly inflict pain, may constitute cruel and unusual punishment under the Eighth Amendment.  *Whitley v. Albers*, 475 U.S. 312, 319 (1986); *see Rhodes v. Chapman*, 452 U.S. 337, 346 (1981); *see also Estelle v. Gamble*, 429 U.S. 97, 104 (1976) ("[D]eliberate indifference to serious medical needs of prisoners

---

[8]   Even if the Court considers additional information from Plaintiff's responses and replies, Plaintiff still has not sufficiently stated an Eighth Amendment claim, thus, Claim One would still fail.

11

constitutes the unnecessary and wanton infliction of pain proscribed in the Eighth Amendment.") (internal quotation marks and citation omitted).

As the Magistrate Judge duly noted, an Eighth Amendment claim involves "a two-pronged inquiry, comprised of an objective component and a subjective component." *Self v. Crum*, 439 F.3d 1227, 1230 (10th Cir. 2006). First, under the objective component, the injury must be sufficiently serious, showing a substantial risk of serious harm. *Farmer*, 511 U.S. at 834; *see also Self*, 439 F.3d at 1230. Second, under the subjective component, the defendant must have a "sufficiently culpable state of mind." *Farmer*, 511 U.S. at 834 (citation omitted); *see also Self*, 439 F.3d at 1230-31.

a)    <em>Sufficiently Serious</em>

Plaintiff's complaint does not satisfy the Eighth Amendment inquiry. First, the injury alleged by Plaintiff is not sufficiently serious to warrant a claim under the Eighth Amendment. Plaintiff alleges "serious chronic medical issues" that require a high fiber diet.[9] "A medical need is sufficiently serious if it is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Sealock v. Colorado*, 218 F.3d 1205, 1209 (10th Cir. 2000) (quoting *Hunt v. Uphoff*, 199 F.3d 1220, 1224 (10th Cir. 1999)). "[E]xamples of serious medical needs include a brain tumor, delay in removing broken pins in a hip, premature return to prison after surgery, a bleeding

---

[9]   A description of Plaintiff's symptoms related to his "serious chronic medical issues" is detailed in the Complaint. (Doc. # 67 at 5 n.1.)

ulcer, and loss of an ear." *Mandala v. Coughlin*, 920 F. Supp. 342, 353 (E.D.N.Y. 1996) (internal citations omitted).  In *Erickson*, the Supreme Court deemed an allegedly life-threatening removal from a hepatitis C treatment to be sufficiently serious.  *Erickson v. Pardus*, 551 U.S. 89, 91 (2007).  A medically-required diet has been considered sufficiently serious in the context of a prisoner suffering from diabetes.  *Johnson v. Harris*, 479 F. Supp. 333, 334 (S.D.N.Y. 1979) (where the prisoner suffered from diabetic gangrene requiring amputation of a portion of his leg).

In the instant case, Plaintiff points to medical records from a surgery that he underwent in 1984, which instructed him to stay on a high fiber diet.  (*See* Doc. # 108 at 5.)  Post-surgery recommendations from 1984 do not sufficiently represent a diagnosis "mandating treatment" that would rise to the necessary level for Plaintiff to satisfy the objective prong of an Eighth Amendment inquiry.  Thus, Plaintiff does not demonstrate a denial of treatment that is sufficiently serious to maintain an Eighth Amendment claim.

    *b)*  *Deliberate Indifference*

Plaintiff's allegations also fail because they do not demonstrate deliberate indifference by Defendants, which is necessary to meet the subjective prong of an Eighth Amendment inquiry.  A plaintiff must establish the defendant "knew [plaintiff] faced a substantial risk of harm and disregarded that risk, by failing to take reasonable measures to abate it."  *Hunt v. Uphoff*, 199 F.3d 1220, 1224 (10th Cir. 1999) (internal quotation marks and citation omitted).  "[T]he official must both be aware of facts from

which the inference could be drawn that a substantial risk of harm exists, and he must draw the inference." *Farmer*, 511 U.S. at 837.  "[A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976).

In the instant case, Defendants' failure to provide the treatment that Plaintiff seeks based on <u>one</u> reference in post-surgery medical records that are more than 20 years old does not rise to the level of deliberate indifference required under an Eighth Amendment claim. *See Perkins v. Kansas Dept. of Corrs.*, 165 F.3d 803, 811 (10th Cir. 1999) (disagreement with medical personnel "does not rise to a claim for deliberate indifference to serious medical needs"); *see also Olson v. Stotts*, 9 F.3d 1475, 1477 (10th Cir. 1993) ("[a] difference of opinion does not support a claim of cruel and unusual punishment").  Plaintiff asserts that Defendant Nafziger's "passing the buck" to the Chaplain after being asked by Plaintiff to be examined by a non-BOP proctologist rises to the level of deliberate indifference.  (Doc. # 108 at 2, 4.)  However, Plaintiff's allegations do not demonstrate that Defendants knew Plaintiff faced a substantial risk of harm and failed to take reasonable measures to avoid that harm.  Plaintiff's allegations simply do not show that Defendants were deliberately indifferent to a substantial risk of harm.  Thus, Plaintiff does not satisfy the subjective prong of an Eighth Amendment

inquiry and his Eighth Amendment claim[10] against the BOP and the individual

Defendants is dismissed in its entirety.

**B.     CLAIM TWO:  FIRST AMENDMENT CLAIM**

Plaintiff next alleges that he was, and continues to be, subjected to religious

discrimination in violation of the First Amendment.  (Doc. # 67 at 19.)  This claim is

brought against the BOP and Defendants Wiley, Lappin, Nalley, and Powley.[11]  Plaintiff

does not object to the Magistrate Judge's Recommendation regarding Claim Two, so

the Court reviews for clear error.  *See Summers v. State of Utah*, 927 F.2d 1165, 1167

(citing *Thomas v. Arn*, 474 U.S. 140, 150, 154 (1985)).

In sum, Plaintiff alleges that (1) he was arbitrarily removed from the Common

Fare diet and was not offered a comparable alternative to meet his religious needs;

(2) Defendants created policies condoning illegal acts; and (3) Defendants ignored

Plaintiff's grievances and failed to properly supervise subordinates.  (Doc. # 67 at 19-

28.)  The Magistrate Judge recommended dismissal of the claims against Defendants

Wiley and Powley for lack of personal participation; however, he recommended denial

of the BOP's motion to dismiss Claim Two.  Finding no clear error regarding the

---

[10]   Because the Court finds that Plaintiff does not state an Eighth Amendment claim, it is
unnecessary to go through a personal participation analysis for Defendants Wiley, Jones, and
Bauer.  However, the Court agrees with the Magistrate Judge that this claim against those
Defendants would also be dismissed under 12(b)(6) for lack of personal participation.  (*See*
Doc. # 107 at 18-19, 23.)

[11]   Because all claims against Defendants Lappin and Nalley are dismissed for lack of
personal jurisdiction, the Court will not address Plaintiff's First Amendment claims against them.

recommended dismissal of Defendant Wiley, the Court affirms that recommendation. However, the Court finds that Defendant Powley's and BOP's Motions to Dismiss Claim Two should be granted for failure to state a claim.

At the outset, the Court notes that although the Supreme Court has not affirmatively extended *Bivens* liability to First Amendment claims, it has assumed the application of *Bivens* to First Amendment claims. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1948 (2009). Accordingly, the Court will address Plaintiff's First Amendment claim assuming, without deciding, that it is actionable under *Bivens*.

1.   Defendant Wiley

The Magistrate Judge correctly recommended the dismissal of Defendant Wiley from Claim Two for lack of personal participation. (Doc. # 107.) Plaintiff's First Amendment claim against Defendant Wiley focused on denial of grievances, budget cuts, and failure to supervise subordinates, which are insufficient to establish personal participation. (Doc. # 107 at 16). *See Gallagher v. Shelton*, 587 F.3d 1063, 1069 (10th Cir. 2009) ("Supervisory status alone does not create [ ] liability.") (citing *Duffield v. Jackson*, 545 F.3d 1234, 1239 (10th Cir. 2008)); *see also Whitington v. Ortiz*, 307 F. App'x 179, 193 (10th Cir. 2009) (unpublished) (holding that denial of grievances is insufficient to establish personal participation). Thus, finding no clear error, the Court adopts the Magistrate Judge's recommendation to dismiss Defendant Wiley from Claim Two for lack of personal participation.

16

2.   Defendant Powley

The Court disagrees with the recommended dismissal of Defendant Powley for

lack of personal participation,[12] but finds Defendant Powley should be dismissed from

Claim Two on other grounds.  (*See* Doc. # 107 at 26-28.)  As previously noted, personal

participation is an essential allegation in a *Bivens* action.  *See Iqbal*, 129 S. Ct. at 1949

("Absent vicarious liability, each Government official, his or her title notwithstanding, is

only liable for his or her own misconduct."); s*ee also Kite v. Kelley*, 546 F.2d 334, 337-

38 (10th Cir. 1976) (a plaintiff suing federal officials for constitutional violations under

*Bivens* must show an affirmative link between the defendant's conduct and the alleged

constitutional deprivation).

Defendants argue that Plaintiff's claims against Defendant Powley are conclusory

and do not show personal participation.  (Doc. # 109 at 17-18.)  The Court is not

persuaded with respect to Defendant Powley's alleged participation.  Plaintiff asserts

specific allegations regarding actions by Defendant Powley which allegedly violate his

First Amendment rights.  Plaintiff alleges that Defendant Powley, in his role as Chaplain,

discriminated against him and arbitrarily removed him from the Common Fare diet

without providing an alternative, thereby placing a substantial burden on his religious

beliefs.  (Doc. # 67 at 23-25.)  Specifically, Plaintiff alleges that Defendant Powley

removed him from the Common Fare diet following Plaintiff's refusal "to deny his

---

[12]   In his recommended dismissal of Claim Two against Defendant Powley, the Magistrate Judge appears to have premised his recommendation on a conflation of the tests for First and Eighth Amendment claims.  (Doc. # 107 at 27.)  Plaintiff did not allege an Eighth Amendment claim against Defendant Powley.

Christian faith and claim a Jewish or Muslim faith." (Doc. # 67 at 23.) Therefore, Plaintiff sufficiently alleges personal participation by Defendant Powley in Claim Two.

However, upon a closer review, while Plaintiff appears to plead generally the elements in support of a First Amendment claim, Plaintiff's allegations are largely unsubstantiated. Moreover, certain allegations belie his contention that his need to maintain a diet comprised of "unrefined whole-grains and living foods with its natural insoluble fiber intact" is religious-based and/or that meals Defendants provide impose a "substantial burden" on his ability to practice his Christianity. For example, Plaintiff's allegations clearly state that he "adhered to a daily diet high in insoluble fiber of whole foods" prior to his arrest in April 1995, dating back as early as 1984, upon the recommendation of a surgeon. (Doc. #67, ¶¶ 11, 12, n.3). However, Plaintiff did not become a Christian until June 1996, twelve years later. (*Id.*, ¶ 15). Therefore, in drawing all reasonable inferences from this *pro se* plaintiff's Complaint, as the Court must, the Court infers that Plaintiff's adoption of a whole foods diet was for health reasons, rather than for religious reasons, as Plaintiff now contends.[13] This is

---

[13] The Court is well aware of this Circuit's standard for affording religious dietary practices constitutional protection. The Tenth Circuit has held that "a prisoner's belief in religious dietary practices is constitutionally protected if the belief is 'genuine and sincere,' even if such dietary practices are not doctrinally 'required' by the prisoner's religion." *Kay v. Bemis*, 500 F.3d 1214, 1220 (10th Cir. 2007) (discussing *LaFevers v. Saffle*, 936 F.2d 1117, 1119 (10th Cir. 1991) (concluding that the "district court abused its discretion in dismissing [the] plaintiff's complaint to the extent it based its decision on the fact that a vegetarian diet is not required by the Seventh Day Adventist Church."). Further, "'[t]he inquiry into the sincerity of a free-exercise plaintiff's religious beliefs is almost exclusively a credibility assessment, . . . and therefore the issue of sincerity can rarely be determined on summary judgment,' let alone a motion to dismiss." *Id.* at 1219 (quoting *Snyder v. Murray City Corp.*, 124 F.3d 1349, 1352-53 (10th Cir. 1997)). The determination of what is a "religious" belief or practice does not "turn

underscored by Plaintiff's conflation of his purported religious rights with his

medical/health needs by alleging that "Chaplin Powley's acts and omissions [in

arbitrarily removing Plaintiff from the common fare diet] directly contribute to

exacerbating Plaintiff's medical issues [*e.g.*, symptoms of constipation, hemorrhoids,

bleeding, cramps, *etc.*, which Plaintiff experienced prior to his surgery in 1984] whereby

needlessly causing ongoing physical and spiritual pain and suffering to this day." (*Id.*,

¶ 119).  Upon the Court's review, the reference to consequent "spiritual pain" is vague

and a mere afterthought.

Even if Plaintiff later embraced religious reasons for adopting a whole foods diet,

Plaintiff has failed to allege sufficiently that the BOP's meal service imposes a

"substantial burden" on his ability to practice Christianity.  Further, the instant facts are

distinguishable from other decisions in which courts found that prison officials' failure to

---

upon a judicial perception of the particular belief or practice in question; religious beliefs need not be acceptable, logical, consistent, or comprehensible to others in order to merit First Amendment protection."  *Thomas v. Review Bd. of Indiana Employment Sec. Div.*, 450 U.S. 707, 714 (1981).  A plaintiff need not "plead facts sufficient for an objectively reasonable person to conclude that his belief his religious in nature . . . .  Religion is by its nature subjective . . . . If [a plaintiff] could explain or prove objectively why his religion commanded the belief in question, it might no longer be a religious belief, or at least not one rooted in faith."  *Watts v. Florida Int'l Univ.*, 495 F.3d 1289, 1296 (11th Cir. 2007).

In the instant case, the Court is not questioning the truth of God's purported dietary requirements for Christians.  However, though mindful of the fact that "sincerity and genuineness" of one's religious beliefs is a credibility determination for the trier of fact, the Court finds that Plaintiff's own allegations render his religious belief-based claims suspect.  In viewing the Complaint as a whole, the health-based motivation for his adoption of the at-issue diet is readily apparent.  The religious/spiritual motivation for this diet is far less apparent; the First Amendment argument appears to be an attempt to obtain special treatment for which Plaintiff has not alleged sufficiently a medical necessity.

comply with the plaintiffs' dietary requests imposed a substantial burden on their religious practices.

A "substantial burden" is one that (1) significantly inhibits or constrains a plaintiff's religious conduct or expression, (2) meaningfully curtails a plaintiff's ability to express adherence to his faith, or (3) denies the plaintiff reasonable opportunity to engage in fundamental religious activities.  *Wares v. Simmons*, 524 F. Supp. 2d 1313, 1320, n.9 (D. Kan. 2007).[14]  In sum, Plaintiff has failed to allege sufficient facts to show that the diet he currently eats lacks sufficient food items that he may consume without violating his religion.

The facts alleged render the instant case analogous to *Barner v. Marberry*, No. 07-98, 2008 WL 3891264 (W.D. Pa. Aug. 18, 2008) (unpublished) (finding that the prisoner plaintiff, who kept kosher and received pre-packaged kosher meals that included prepared kosher vegetables, failed to state a First Amendment claim in connection with the prison's failure to provide him with fresh kosher vegetables). In pertinent part, the district court concluded, "Plaintiff's allegations are reduced to no more than an expression of his preference for fresh vegetables" because "Plaintiff does not complain that the religious certified meals [   ] failed to comply with his religious standards . . . [A]bsent from Plaintiff's allegations is any claim that his religion requires him to eat fresh vegetables, and that the omission of fresh vegetables from his kosher

---

[14]   The Tenth Circuit uses the same "substantial burden" test to evaluate RFRA and First Amendment free exercise prisoner claims.  *Id.*

20

diet was, thus, a substantial burden on his religious practice." *Barner*, 2008 WL 3891264, at *7.

Similarly, in the instant case, Plaintiff appears to state a preference for eating meals comprised entirely, or almost entirely, of "unrefined whole-grains and living foods". (Doc. #67, ¶ 17).  However, Plaintiff does not state that Christianity requires him to consume only un-refined whole grains and living foods, and he does not contend that his meals are bereft of any such foods.  Rather, Plaintiff contends that his meals do not contain enough of them and that the meals are small and lack variety.  (*Id.*, ¶ 21; n.21).  Plaintiff does not contend that the meals leave him without anything to eat.  Rather, Plaintiff portends ominous consequences without any substantiation.  (*See* Doc. # 93, Plaintiff's Response to Defendant Powley's Motion to Dismiss, at 5) ("For if [Plaintiff] stops consuming those refined and dead foods that defile his body he will lose weight, then BOP staff will force feed him to prevent death by malnutrition.")

The instant case is clearly distinguishable from the situation presented in *Abdulhaseeb v. Calbone*, 600 F.3d 1301 (10th Cir. 2008), in which the prisoner plaintiff, who was Muslim, was denied halal food and provided vegetarian or non-pork common fare food instead.  The Tenth Circuit reversed the district court's grant of summary judgment in connection with the plaintiff's religion-based claim.  The court drew a reasonable inference that the defendants' "failure to provide a halal diet either prevents [Plaintiff's] religious exercise, or, at the least, places substantial pressure on [Plaintiff] not to engage in his religious exercise by presenting him with a Hobson's choice – either

21

he eats a non-halal diet in violation of his held beliefs, or he does not eat." 600 F.3d at 1317.

The instant dispute is also distinguishable from *Vashone-Caruso v. Zenon*, No. 95-1578, 2005 WL 5957978 (D. Colo. July 25, 2005) (granting judgment in favor of prisoner plaintiff on his religion-based claim). The prisoner plaintiff, a practitioner of the Hanafi school of Sunni Islam, complained that the defendants' failure to provide him with halal red meat imposed a substantial burden on his religious practices. In the plaintiff's view, consuming halal red meat was a sign of gratitude towards God's provision of such food. Upon consideration of evidence that Muslim inmates were only provided halal red meat twice a year, the court determined that the defendants' food service policies imposed a substantial burden on the plaintiff's religious practices. *Id.* at *12.

In the instant case, Plaintiff has not alleged that he faces the Hobson choice present in *Abdulhaseeb v. Calbone* or that Defendants have infrequently provided him with the foods that are purportedly integral to Plaintiff's religious practice, as was the case in *Vashone-Caruso v. Zenon.*

In any event, even if Plaintiff has stated a valid First Amendment claim, the Court finds that this claim is barred by the statute of limitations.[15] "A *Bivens* claim is subject to the general personal injury statute in the state where the action arose." *Trujillo v.*

---

[15] Defendant Powley asserts this affirmative defense in his motion to dismiss. (Doc. # 83 at 17-18.) Defendant Powley also asserts a qualified immunity defense (id. at 13-16), but the Court need not address this because the claim is time-barred.

*Simer*, 934 F. Supp. 1217, 1226 (D. Colo. 1996) (citing *Wilson v. Garcia*, 471 U.S. 261, 276 (1985); *Indus. Constructors v. United States Bureau of Reclamation*, 15 F.3d 963, 968 (10th Cir. 1994)).  Under Colorado law, personal injury actions are subject to a two-year statute of limitations.  *See* COLO. REV. STAT. § 13-80-102 (1995).

In the instant case, Defendant Powley removed Plaintiff from the Common Fare diet on March 3, 2006.  (Doc. # 67 at 23.)  Plaintiff did not file his complaint in the instant case until March 16, 2009.  (Doc. # 2.)  The action is thus barred by the two-year statute of limitations.  Even if the statute of limitations was tolled while Plaintiff was filing required administrative grievances with the BOP, the action is still barred by the statute of limitations.  According to Plaintiff's Second Amended Complaint, his administrative grievance, with respect to his religious needs, was denied on June 6, 2006 (Doc. # 67 at 25), and his administrative appeals were denied on August 31, 2006 and November 27, 2006 (*id.* at 26-27).   After the denial of his grievance and subsequent appeals, Plaintiff waited more than two years before filing his complaint in this Court.

Plaintiff argues that his claim against Defendant Powley is not time-barred because Plaintiff is suffering a continuing violation of his First Amendment rights.  (Doc. # 93 at 29.)  The Court is not persuaded.  "Courts have recognized that in some circumstances, ongoing constitutional deprivations can constitute continuing violations that toll the statute of limitations or otherwise defeat a defense of untimeliness."  *Georgacarakos v. Wiley*, No. 17-cv-01712, 2008 WL 4216265, at *12 (D. Colo. Sept. 12, 2008) (unpublished) (citing *Cowell v. Palmer Twp.*, 263 F.3d 286, 292 (3d Cir. 2002)).

23

However, the Tenth Circuit has "never endorsed such a 'continuing violation' theory of ex post facto liability in this context; to the contrary, [it has] rejected analogous arguments in the past." *Wood v. Utah Bd. of Pardons & Parole*, No. 09-4225, 2010 WL 1434400, at *3 n.2 (10th Cir. April 12, 2010) (unpublished).  Additionally, if a single, discrete act has continuing consequences, then the 'continuing violation' doctrine does not apply. *Georgacarakos*, 2008 WL 4216265, at *12 (citing *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 110 (2002)).  Plaintiff's allegations against Defendant Powley focus on Plaintiff's removal from the Common Fare diet, *i.e.*, a discrete event.  (Doc. # 67 at 23-25.)  The Court finds no continuing violation of Plaintiff's rights with respect to Defendant Powley.  Thus, Claim Two against Defendant Powley is barred by the statute of limitations.

      3.   <u>Defendant BOP</u>

      Finally, the Court disagrees with the Magistrate Judge that Plaintiff sufficiently stated a First Amendment claim with respect to the BOP.  Prisoners retain First Amendment rights, including the right of free exercise of religion, however, those rights may be subject to reasonable limitations.  *Kay v. Bemis*, 500 F.3d 1214, 1218 (10th Cir. 2007) (citing *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987)).  "[I]n order to allege a constitutional violation based on a free exercise claim, a prisoner-plaintiff must survive a two-step inquiry."  *Id.*  "First, the prisoner-plaintiff must [ ] show that a prison

regulation 'substantially burdened . . . sincerely-held religious beliefs.'"[16]  *Id.* (quoting

*Boles v. Neet*, 486 F.3d 1177, 1182 (10th Cir. 2007)).  "Second, prison officials-

defendants may 'identif[y] the legitimate penological interests that justif[ied] the

impinging conduct.'"[17]  *Id.*  (quoting *Boles*, 486 F.3d at 1182).

As already discussed, the Court finds that Plaintiff's allegations undermine his

purported religious motivation to adopt a whole foods diet.  Further, Plaintiff fails to

substantively allege how Defendants' food service policies substantially burdened the

exercise of his religion.  Because Plaintiff has failed to satisfy the first part of the inquiry,

the Court need not consider whether legitimate penological interests exist.

Therefore, the Court finds that Plaintiff has not stated a plausible claim against

the BOP under the First Amendment.

## C.      CLAIM THREE:  RELIGIOUS FREEDOM RESTORATION ACT CLAIM

In Claim Three, Plaintiff alleges that the BOP and Defendants Wiley, Lappin,

Nalley, and Powley violated the RFRA, 42 U.S.C. § 2000bb to bb-4.[18]  (Doc. # 67 at 29.)

---

[16]   A "substantial burden" is one that (1) significantly inhibits or constrains a plaintiff's religious conduct or expression, (2) meaningfully curtails a plaintiff's ability to express adherence to his faith, or (3) denies a plaintiff reasonable opportunity to engage in fundamental religious activities.  *Wares v. Simmons*, 524 F. Supp. 2d 1313, 1320 n.9 (D. Kan. 2007).  The Tenth Circuit uses the same "substantial burden" test to evaluate RFRA and First Amendment free exercise prisoner claims.  *Id.*

[17]   The burden then shifts back to the prisoner to show that the penological concern is irrational.  *Kay*, 500 F.3d at 1219 n.2 (quoting *Salahuddin v. Goord*, 467 F.3d 263, 275 (2d Cir. 2006)).

[18]   Again, the Court notes that Defendants Lappin and Nalley are dismissed for lack of personal jurisdiction, therefore, RFRA claims against them will not be addressed.

In this claim, Plaintiff alleges the same conduct as alleged in support of his First Amendment claim (Claim Two).  (*Id.*)  The Magistrate Judge recommended that the Court deny motions to dismiss by Defendants Wiley, Powley, and the BOP.  (Doc. # 107 at 41.)  No objections were made to this portion of the Recommendation, therefore, the Court reviews for clear error.  *See Summers v. State of Utah*, 927 F.2d 1165, 1167 (citing *Thomas v. Arn*, 474 U.S. 140, 150, 154 (1985)).

As the Magistrate Judge duly noted, to establish an RFRA claim, a prisoner must show that the federal government substantially burdened the prisoner's sincere exercise of religion.  *Kikumura v. Hurley*, 242 F.3d 950, 960 (10th Cir. 2001).  According to the RFRA, the government may not substantially burden a person's practice of their religion unless the restriction is furthering a compelling government interest and is the least restrictive means of doing so.  42 U.S.C. § 2000bb-1 (1993).

Because Plaintiff fails to substantively allege how Defendants' food service policies substantially burdened his practice of Christianity, the Court finds that Plaintiff's RFRA claim also fails.

## IV.  CONCLUSION

For the reasons discussed above, the Court AFFIRMS AND ADOPTS, IN PART, AND OVERRULES, IN PART, the June 22, 2010 Recommendation of Magistrate Judge Craig B. Shaffer.  (Doc. # 107.)  Accordingly, IT IS ORDERED THAT:

1.      Defendants' various Motions to Dismiss are GRANTED (Doc. ## 68, 72, 73, 74, 76, and 83); and

2.      Plaintiffs claims are DISMISSED WITH PREJUDICE.

DATED: August __12__, 2010

                                    BY THE COURT:


                                    _____
                                    CHRISTINE M. ARGUELLO
                                    United States District Judge